BLECHER & COLLINS, P.C.
MAXWELL M. BLECHER (State Bar # 026202)
  *mblecher@blechercollins.com*
MARYANN R. MARZANO (State Bar #96867)
  *mmarzano@blechercollins.com*
515 South Figueroa Street, Suite 1750
Los Angeles, California 90071-3334
Telephone: (213) 622-4222
Facsimile: (213) 622-1656

GRANT & EISENHOFER, P.A.
JAY W. EISENHOFER (Admitted *Pro Hac Vice*)
  *jeisenhofer@gelaw.com*
GEOFFREY C. JARVIS (Admitted *Pro Hac Vice*)
  *gjarvis@gelaw.com*
HUNG G. TA (Admitted *Pro Hac Vice*)
  *hta@gelaw.com*
DEBORAH A. ELMAN (Admitted *Pro Hac Vice*)
  *delman@gelaw.com*
485 Lexington Avenue, 29th Floor
New York, New York  10017
Telephone: (646) 722-8500
Facsimile: (646) 722-8501

Attorneys for Plaintiff
STICHTING PENSIOENFONDS ABP

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| STICHTING PENSIOENFONDS ABP,<br><br>Plaintiff,<br><br>vs.<br><br>COUNTRYWIDE FINANCIAL CORPORATION; COUNTRYWIDE HOME LOANS, INC; CWALT, INC.; CWMBS, INC.; CWABS, INC.; CWHEQ, INC; COUNTRYWIDE CAPITAL MARKETS; COUNTRYWIDE SECURITIES CORPORATION; BANK OF AMERICA CORP.; NB HOLDINGS | Case No. 10-CV- 07275 MRP(MANx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND THIS ACTION TO CALIFORNIA STATE COURT**<br><br>Date:   **December 6, 2010**<br>Time:   **11:00 a.m.**<br>Place:  **Courtroom 12**<br>          **Hon. Mariana R. Pfaelzer** |

1   CORPORATION; DEUTSCHE BANK
2   SECURITIES INC.; UBS
    SECURITIES, LLC; GREENWICH
3   CAPITAL MARKETS, INC. A.K.A.
    RBS GREENWICH CAPITAL;
4   BARCLAYS CAPITAL INC.;
5   STANFORD L. KURLAND; DAVID
    A. SPECTOR; ERIC P. SIERACKI; N.
6   JOSHUA ADLER; RANJIT
7   KRIPALANI; JENNIFER S.
    SANDEFUR; and DAVID A.
8   SAMBOL,

9                         Defendants.

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................ii

PRELIMINARY STATEMENT ........................................................................... 1

FACTUAL BACKGROUND ............................................................................... 3

    A.    THE SECURITIZATION PROCESS ........................................................... 3

    B.    PLAINTIFF'S PURCHASES OF RMBS ..................................................... 4

    C.    DEFENDANTS' MISREPRESENTATIONS AND OMISSIONS ..................... 5

    D.    PROCEDURAL BACKGROUND ................................................................ 7

    E.    THE AMERICAN HOME BANKRUPTCY CASE ......................................... 8

ARGUMENT ...................................................................................................... 9

I.    APPLICABLE STANDARD FOR REVIEWING REMOVAL.................. 9

II.    THE COURT DOES NOT HAVE "RELATED TO" BANKRUPTCY
JURISDICTION PURSUANT TO 28 U.S.C. 1334(B) .............................. 10

    A.    THE TESTS FOR "RELATED TO" JURISDICTION IN THE NINTH
        CIRCUIT ............................................................................................ 11

    B.    THE COUNTRYWIDE DEFENDANTS HAVE FAILED TO ESTABLISH
        A "CLOSE NEXUS" BETWEEN THIS ACTION AND THE
        AMERICAN HOME MORTGAGE BANKRUPTCY CASE .......................... 14

    C.    THE COUNTRYWIDE DEFENDANTS HAVE FAILED TO ESTABLISH
        A SUFFICIENT CONNECTION BETWEEN THIS ACTION AND THE
        AMERICAN HOME MORTGAGE BANKRUPTCY CASE EVEN
        UNDER THE LESS STRINGENT "CONCEIVABLE EFFECT" TEST .......... 16

III.    DEFENDANTS' REMOVAL WAS IMPROPER BECAUSE THEY
FAILED TO REMOVE THE ACTION TO A FEDERAL DISTRICT
WHERE THE RELEVANT BANKRUPTCY CASE WAS PENDING .... 17

IV.    EVEN IF THIS COURT HAD "RELATED TO" JURISDICTION,
THE COURT SHOULD ABSTAIN FROM EXERCISING
JURISDICTION AND REMAND AS A MATTER OF EQUITABLE
DISCRETION .................................................................................... 21

CONCLUSION ............................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abrego Abrego v. The Dow Chem. Co.,*
   443 F.3d 676 (9th Cir. 2006) ........................................................................... 9

*Blachy v. Butcher,*
   221 F.3d 896 (6th Cir. 2000) ................................................................... 19, 20

*Brown v. Affiliated Computer Servs.,*
   No. C08-5367 FDB, 2008 WL 2856854 (W.D. Wash. July 21, 2008) ..............
   .......................................................................................................21, 22, 24, 25

*Celotex Corp. v. Edwards,*
   514 U.S. 300 (1995)........................................................................................ 14

*Citigroup, Inc. v. Pac. Inv. Mgmt. Co.,*
   296 B.R. 505 (C.D. Cal. 2003) .....................................................21, 22, 23, 24

*Cook v. Cook,*
   220 B.R. 918 (Bankr. E.D. Mich. 1997)................................................... 19, 20

*In re Cytodyn of N.M., Inc.,*
   374 B.R. 733 (Bankr. C.D. Cal. 2007)........................................................22, 24, 25

*Duke v. Trans Union LLC,*
   No. 08-520-KI, 2008 WL 4319982 (D. Or. Sept. 16, 2008) ........................... 16

*In re Eastport Assocs.,*
   935 F.2d 1071 (9th Cir. 1991) ....................................................................... 22

*In re Federal-Mogul Global, Inc.,*
   300 F.3d 368 (3d Cir. 2002)............................................................................ 14

*In re Fietz,*
   852 F.2d 455 (9th Cir. 1988) ..................................................................... 12, 13

*Ford Motor Co. v. Ins. Co. of N. Am.,*
   35 Cal. App. 4th 604 (1995) .......................................................................... 24

*Foster Poultry Farms, Inc. v. IBM Corp.*,
  No. Civ-F-06-0680 AWI SMS, 2006 WL 2769944 (E.D. Cal. Aug. 1,
  2006) ................................................................................................................ 17

*Gaus v. Miles, Inc.*,
  980 F.2d 564 (9th Cir. 1992) ..................................................................... 9, 10

*Gould v. Mutual Life Ins. Co. of N.Y.*,
  790 F.2d 769 (9th Cir. 1986) .......................................................................... 10

*In re Harris*,
  590 F.3d 730 (9th Cir. 2009) .......................................................................... 22

*In re Indian Motorcycle Co., Inc.*,
  261 B.R. 800 (Bankr. 1st Cir. 2001) ............................................................... 18

*Kaonohi Ohana Ltd. v. Sutherland*,
  873 F.2d 1302 (9th Cir. 1989) ........................................................................ 14

*Kasim v. Equifax Info. Servs., LLC*,
  No. 08-627-HA, 2008 WL 4858267 (D. Or. Nov. 10, 2008) .......................... 16

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
  511 U.S. 375 (1994) ........................................................................................ 10

*Lichtenfels v. Electro-Motive Diesel, Inc.*,
  No. 09-1590, 2010 WL 653859 (W.D. Pa. Feb. 22, 2010) ............................. 17

*Lipoderm Inst., Inc. v. Moca Holdings, LLC*,
  No. CV 10-02389-RGK, 2010 WL 1708848 (C.D. Ca. April 27, 2010) ........ 10

*Luther v. Countrywide Home Loans Servicing LP*,
  533 F.3d 1031 (9th Cir. 2008) ................................................................... 23, 24

*McCarthy v. Prince*,
  230 B.R. 414 (BAP 9th Cir. 1999) ............................................................ 21, 24

*Pacor, Inc. v. Higgins*,
  743 F.2d 984 (3rd Cir. 1984) .................................................................... 12, 17

*Parke v. Cardsystems Solutions, Inc.*,
  No. C06-4857 WHA, 2006 WL 2917604 (N.D. Cal. Oct. 11, 2006) .............. 25

*In re Resorts Int'l, Inc.*,
  372 F.3d 154 (3d Cir. 2004) ............................................................................ 16

iii

*State of Montana v. Goldin (In re Pegasus Gold Corp.),*
   394 F.3d 1189 (9th Cir. 2005) ............................................................. 12, 13, 15

*Syngenta Crop Prot., Inc. v. Henson,*
   537 U.S. 28, 123 S. Ct. 366 (2002) ............................................................. 10

*In re Tucson Estates,*
   912 F.2d 1162 (9th Cir. 1990) ............................................................. 21

*U.S. Brass Corp. v. Travelers Ins. Group (In re U.S. Brass Corp.),*
   301 F.3d 296 (5th Cir. 2002) ............................................................. 13

*Valdez v. Allstate Ins. Co.,*
   372 F.3d 1115 (9th Cir. 2004) ............................................................. 10

*In re W.R. Grace & Co.,*
   591 F.3d 164 (3d Cir. 2009) ............................................................. 14

**STATUTES**

15 U.S.C. § 77v(a) ............................................................. 23

28 U.S.C. § 1334 ............................................................. *passim*

28 U.S.C. § 1452(b) ............................................................. *passim*

28 U.S.C. § 1447(c) ............................................................. 1

Plaintiff Stichting Pensioenfonds ABP ("Plaintiff" or "ABP") moves pursuant to 28 U.S.C. § 1447(c) for an order remanding to the Superior Court of the State of California, County of Los Angeles, any and all claims and causes of action removed by Defendants Countrywide Financial Corporation; Countrywide Home Loans, Inc.; CWALT, Inc.; CWMBS, Inc.; CWABS, Inc.; CWHEQ, Inc.; Countrywide Capital Markets; Countrywide Securities Corporation and N. Joshua Adler (the "Countrywide Defendants") pursuant to the Notice of Removal filed in this action on September 29, 2010 (the "Countrywide Removal").

## PRELIMINARY STATEMENT

This action concerns residential mortgage-backed securities ("RMBS") purchased by Plaintiff based upon misrepresentations and omissions contained in offering documents prepared by Defendants Countrywide Financial Corporation ("CFC"); Countrywide Home Loans, Inc. ("CHL"); CWALT, Inc. ("CWALT"); CWMBS, Inc. ("CWMBS"); CWABS, Inc. ("CWABS"); CWHEQ, Inc. ("CWHEQ"); Countrywide Capital Markets ("CCM"); Countrywide Securities Corporation ("CSC"); Bank of America Corp. ("Bank of America"); NB Holdings Corporation ("NB Holdings"); Deutsche Bank Securities Inc. ("Deutsche Bank"); UBS Securities, LLC ("UBS"); Greenwich Capital Markets, Inc. a.k.a. RBS Greenwich Capital ("RBS"); Barclays Capital Inc. ("Barclays"); Stanford L. Kurland ("Kurland"); David A. Spector ("Spector"); Eric P. Sieracki ("Sieracki"); N. Joshua Adler ("Adler"); Ranjit Kripalani ("Kripalani"); Jennifer S. Sandefur ("Sandefur"); and David A. Sambol ("Sambol") (collectively, the "Defendants").

On August 18, 2010, Plaintiff ABP filed its Complaint in the Superior Court of the State of California, in the County of Los Angeles, asserting causes of action for violations of §§ 11, 12(a)(2) and 15 of the Securities Act of 1933 (First, Second and Third Causes of Action respectively); violations of §§ 25401, 25501 and 25504 of the California Corporations Code (Fourth Cause of Action); and

1

negligent misrepresentation (Fifth Cause of Action). Plaintiff was entitled to bring its action in California State court. With respect to Plaintiff's Securities Act claims, § 22 of the Securities Act specifically confers concurrent jurisdiction on State and federal courts, and Plaintiff's claims for violations of the provisions of the California Corporations Code and for negligent misrepresentation are purely State law causes of action.

Unable to remove based on federal question or diversity jurisdiction, on September 29, 2010, the Countrywide Defendants filed the Countrywide Removal, purporting to remove the claims asserted against them to federal court based upon "related to" bankruptcy jurisdiction under 28 U.S.C. §§ 1334(b) and 1452(a). The Countrywide Defendants contend that there is bankruptcy "related to" jurisdiction because *one* of the Countrywide Defendants allegedly has claims for indemnification and for loan repurchases against *one* originator – American Home Mortgage Corp. ("American Home") – of the mortgage loans in the pool of mortgages underlying *one* of the 14 RMBS offerings that are the subject of this action. The Countrywide Defendants are wrong.

*First*, the removal statute in 28 U.S.C. § 1452(a), like all removal statutes, is to be construed strictly. *See infra* Argument, Section I. Here, this Court lacks bankruptcy "related to" jurisdiction over the claims asserted against the Countrywide Defendants. Under the applicable test in the Ninth Circuit, this action simply does not have a sufficiently "close nexus" to American Home's bankruptcy case, because American Home's plan of liquidation has already been *confirmed*. That being the case, the plan of allocation to all potential creditors – including the Countrywide Defendants – has already been determined, and nothing in this case can affect that allocation. Under these circumstances, the only way this action could possibly affect the American Home bankruptcy case is if this action were somehow to require the "interpretation, implementation, consummation, execution, or administration" of American Home's plan of

1  liquidation.   The Countrywide Defendants have not even suggested that this is
2  possibly the case here.  *See infra* Argument, Section II.

3      *Second*, under a strict construction of § 1452(a), Defendants were required
4  to remove the claims not just to the district where the Plaintiff's state court action
5  was pending, but also to the *district where the bankruptcy proceeding supplying*
6  *"related to" jurisdiction is pending*.   Here, the bankruptcy proceeding of
7  American Home is pending in the District of Delaware, not in the Central District
8  of California.   Thus, by removing to this district, the Countrywide Defendants
9  failed to satisfy all the requirements of § 1452(a), mandating remand.  *See infra*
10 Argument, Section III.

11     *Third*, and in the alternative, assuming that removal was effective and that
12 this Court had "related to" jurisdiction, remand is warranted under 28 U.S.C.
13 §§ 1334(c)(1) and 1452(b) because there are strong grounds for discretionary
14 abstention and remand.   At heart, the Countrywide Removal has nothing to do
15 with the effect of this action on the bankruptcy proceeding of any mortgage
16 originator, and everything to do with Defendants' preference to defend
17 themselves in federal court.   This is not a proper ground for removal, and
18 Plaintiff's action should be litigated in State court, which is adequately equipped
19 to handle the litigation.  *See infra* Argument, Section IV.

20                    **FACTUAL BACKGROUND**
21   **A.   THE SECURITIZATION PROCESS**
22     RMBS are created through the securitization of residential mortgage loans.
23 In a typical securitization process, a loan originator, such as a mortgage lender or
24 bank, first originates the underlying residential mortgage loans.  ¶47.[1]  After a
25 loan has been made, a "sponsor" or "seller" (who either originated the loans itself
26 or acquired the loans from other loan originators) sells the mortgage loans to a

27  ─────────────────
   [1] All references to "¶" are to the paragraphs in Plaintiff's Complaint, filed August
28 18, 2010.

1  "depositor." *Id.* The depositor pools these loans and deposits them into a special

2  purpose entity or trust created by the depositor. One trust is established to hold

3  the pool of mortgages for each proposed offering. *Id.* With respect to each

4  offering, in return for the pool of mortgages acquired from the depositor, the trust

5  issues and distributes RMBS, in the form of certificates, to the depositor. *Id.* The

6  depositor then works with an underwriter to price and sell the certificates to

7  investors, who collect the mortgage payments from the underlying borrowers. *Id.*

8      In selling the certificates to investors, the depositor and underwriters

9  disseminate various disclosure or offering documents describing the certificates

10 being sold, including a "shelf" registration statement; a "base" prospectus; and a

11 "prospectus supplement."   ¶48.   Typically, the depositor files one shelf

12 registration statement and one base prospectus that apply to multiple trusts the

13 depositor proposes to establish. With respect to each specific trust, the depositor

14 files a prospectus supplement that applies only to that particular trust. *Id.*

15   **B.   PLAINTIFF'S PURCHASES OF RMBS**

16      Between December 2004 and June 2007, Plaintiff purchased RMBS (the

17 "Certificates") from 14 different offerings that were structured and sold by

18 Defendants (¶¶52, 57).[2] In connection with these offerings, Defendants CWALT,

19 CWMBS, CWABS and CWHEQ acted as the depositors, and in that role set up

20 the trusts that held the mortgage pools for each offering and that issued the

21 RMBS secured against these mortgage pools. *Id.* Defendants CWALT,

22 CWMBS, CWABS and CWHEQ also prepared and filed with the SEC numerous

23 ─────────────────────
24 [2] These 14 offerings were CWABS Revolving Home Equity Loan Trust, Series
   2004-Q; CWABS Revolving Home Equity Loan Trust, Series 2004-R; CWHEQ
   Revolving Home Equity Loan Trust, Series 2005-A; CWALT Alternative Loan
25 Trust 2005-J1; CWALT Alternative Loan Trust 2005-40CB; CWHEQ Revolving
   Home Equity Loan Trust, Series 2005-D; CWHEQ Revolving Home Equity Loan
26 Trust, Series 2005-E; CHL Mortgage Pass-Through Trust 2006-HYB1; CWABS
   Asset-Backed Certificates Trust 2006-24; CWABS Asset-Backed Certificates
27 Trust 2007-2; CWABS Asset-Backed Certificates Trust 2007-6; CWABS Asset-
   Backed Certificates Trust 2007-BC2; CWABS Asset-Backed Certificates Trust
28 2007-8; and CWABS Asset-Backed Certificates Trust 2007-10 (¶52).

shelf registration statements for the above offerings.  ¶53.  Each registration statement contained an illustrative form of a prospectus supplement that would be used in the offering of the Certificates.  ¶55.  At the effective date of the offering of the Certificates, Defendants CFC, CCM, CSC, Deutsche Bank, UBS, RBS, and Barclays, in their capacity as the underwriters, prepared and filed a final prospectus supplement with the SEC containing a description of the mortgage pool underlying the offerings and the underwriting standards by which the mortgages were originated.  *Id*.  These underwriter Defendants then marketed and sold the Certificates pursuant to these prospectus supplements to investors such as ABP.

## C.    DEFENDANTS' MISREPRESENTATIONS AND OMISSIONS

In selling the Certificates purchased by ABP, Defendants disseminated offering materials (the registration statements and prospectus supplements) that contained material misrepresentations and omissions concerning the mortgage loans underlying the RMBS.

First, the offering materials contained material misrepresentations and omissions concerning the standards purportedly used to originate the mortgages underlying the Certificates.  Specifically, the offering documents represented that the originators of the mortgage loans included in the pools underlying the Certificates had adhered to certain stated underwriting guidelines when originating the loans.  ¶¶65-70; 107-149.  In reality, however, and unbeknownst to purchasers such as ABP, the originators of the underlying loans had systematically abandoned their stated and traditional underwriting standards, in many cases so that the originators could increase the volume of loan origination and the resulting fees that they earned.  ¶150.

For example, in contravention of their underwriting guidelines, the originators did not require borrowers to generally demonstrate that the ratio of the their monthly housing expenses to their monthly gross income and the ratio of

total monthly debt to the monthly gross income (the "debt-to-income" ratios) were within acceptable limits. *Id.* Instead, the originators extended loans even where income, occupation and other information was missing. In further contravention of the stated and traditional underwriting guidelines, the originators systematically ignored the borrowers' repayment ability and the value and adequacy of the underlying collateral. *Id.* And, in contravention of their stated and traditional underwriting guidelines, the originators routinely and flagrantly allowed non-qualifying borrowers to be approved for loans under "exceptions" to the underwriting standards, even though there were no compensating factors or other proper basis that could possibly justify such exceptions. *Id.*

Second, the offering materials contained material misrepresentations and omissions concerning the value of the collateral securing the mortgages underlying the Certificates purchased by ABP, and the appraisal methods by which such values were obtained. ¶¶72-79. Among other misrepresentations, the offering documents repeatedly assured investors as to the soundness of the appraisals used to arrive at the value of the underlying properties and, specifically, that the real estate collateralizing the loans had been subjected to objective and independent real estate appraisals that complied with the Uniform Standards of Professional Appraisal ("USPAP"). ¶7, 64. The offering documents also disclosed the weighted average combined original loan-to-value ("LTV") ratio of the mortgage loans underlying the Certificates. ¶64. In reality, the originators had not required appraisals to conform to USPAP. To the contrary, the originators inflated appraisals for properties used as collateral for the mortgage loans underlying the Certificates. ¶151. Because these appraisals were inflated, the disclosed LTV ratios were false and misleading. *Id.*

### D. PROCEDURAL BACKGROUND

On August 18, 2010, Plaintiff ABP filed its Complaint in the Superior Court of the State of California, in the County of Los Angeles. The case was assigned Case No. BC-444033.

On September 29, 2010, the Countrywide Defendants filed the Countrywide Removal. In the Countrywide Removal, the Countrywide Defendants purported to remove the claims asserted against them to federal court based upon "related to" bankruptcy jurisdiction under 28 U.S.C. §§ 1334(b) and 1452(a). The Countrywide Defendants contended that, with respect to <u>one</u> of the fourteen offerings that are the subject of this action, CHL Mortgage Pass-Through Trust 2006-HYB1 (the "2006-HYB1 Trust"), <u>one</u> of the originators of the underlying loans was American Home, which had filed a voluntary petition for reorganization under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware. Countrywide Removal, at 2-3, *citing In re Am. Home Mortgage Holdings, Inc.,* Case No. 07-11047-CSS (Bankr. D. Del. filed Aug. 6, 2007). The Countrywide Defendants contended that the instant action was "related to" the American Home bankruptcy case because of certain claims <u>one</u> of the Countrywide Defendants, Defendant CHL, purportedly had against American Home.

Specifically, the Countrywide Defendants asserted that Defendant CHL had entered into an agreement (the "Purchase Agreement") with American Home in connection with the mortgage loans that had been originated by American Home and included in the mortgage pool underlying the 2006-HYB1 Trust. Countrywide Removal, at 3. According to the Countrywide Defendants, Defendant CHL has claims against American Home for indemnification that arise out of this action and claims against American Home for the repurchase of mortgage loans that underlie a portion of the 2006-HYB1 Trust. *Id.* The Countrywide Defendants further assert that Defendant CHL has filed proofs of

7

1  claim in the American Home bankruptcy for both these purported indemnification

2  claims and loan repurchase claims.  *Id.*

3       On October 1, 2010, Defendants Barclays, Deutsche Bank, RBS and UBS

4  filed their Joinder in and Consent to the Countrywide Removal.

5  **E.   THE AMERICAN HOME BANKRUPTCY CASE**

6       Although the Countrywide Defendants claim that this action is related to

7  American Home's bankruptcy, and that Defendant CHL has filed proofs of claim

8  in that bankruptcy, Defendants omit certain critical facts concerning that

9  bankruptcy case.

10       On August 6, 2007, American Home filed a voluntary petition for

11  bankruptcy in the bankruptcy court for the District of Delaware.  *See* Declaration

12  of Geoffrey C. Jarvis, dated October 29, 2010 ("Jarvis Decl."), Ex. A.   On

13  January 11, 2008, the very last day for filing proofs of claim, Defendant CHL

14  filed its proof of claim in the American Home bankruptcy.  On November 21,

15  2008, American Home filed its Disclosure Statement.  *Id.*  Ex. B.  Thereafter, on

16  November 25, 2008, American Home filed an Amended Plan of Liquidation.  *Id.*

17  Ex. C.  The deadline to object to the Amended Plan of Liquidation was January

18  14, 2009.   *Id.* Ex. D, at 2.   The Countrywide Defendants did not file any

19  objections to the plan.  Based on this procedural history, on February 23, 2009,

20  the bankruptcy court entered an Order of Confirmation confirming the Amended

21  Plan of Liquidation. *Id*. Ex. D.

22       The Amended Plan of Liquidation specifically dealt with Defendant CHL's

23  claims against American Home.   As set forth in the Disclosure Statement,

24  Defendant CHL's claims fell under the category of claims called "EPD/Breach

25  Claims":

26      [M]any of the agreements that the Debtors used to sell mortgage loans

27      in the secondary market or to complete securitizations permitted the

28      buyer (or its successor in interest) to "put" the loans back to the

Debtors if the Debtors breached certain seller representations and warranties (relating, e.g., to the creditworthiness of the borrower, the completeness of the loan documentation, etc.), or if the borrower defaulted in payment within a specified period of time (usually 60-90 days) after sale of the loan. For purposes of the Plan, [] "put" rights arising from (i) a breach of representation or warranty are called "Breach of Warranty Claims" and (ii) early payment defaults (or "EPDs") are called "EPD Claims" (collectively with "Breach of Warranty Claims," "EPD/Breach Claims").

Jarvis Decl. Ex. B at 88.   Under the Amended Liquidation Plan, these "EPD/Breach Claims" were liquidated and paid out according to a protocol set forth in the liquidation plan. Jarvis Decl. Ex. C at 46 ("EPD/BREACH CLAIMS PROTOCOL. EPD/Breach Claims shall be liquidated and Allowed as Unsecured Claims in accordance with the following protocol …"). According to American Home's Disclosure Statement, the estimated recovery on these claims was 1.3%. Jarvis Decl. Ex. B at 9. Therefore, to the extent Defendant CHL had any claims against American Home, those claims have already been resolved pursuant to the Amended Plan of Liquidation and the bankruptcy court's order confirming that plan.

## ARGUMENT

## I.   APPLICABLE STANDARD FOR REVIEWING REMOVAL

It is undisputed that the removing party bears the burden of establishing federal jurisdiction and that removal was proper. *See Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 684 (9th Cir. 2006) (It is "a longstanding, near-canonical rule that the burden on removal rests with the removing defendant.") (citations omitted); *see also Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) ("The 'strong presumption' against removal jurisdiction means that the defendant

always has the burden of establishing that removal is proper."). In determining whether the removing party has satisfied this burden, federal courts construe removal statutes, like other jurisdictional statutes, strictly because the federal courts are courts of limited jurisdiction, and because the rights of states are to be respected.[3]

Applying these principles, courts, including courts in this district, have strictly construed the removal provision in 28 U.S.C. § 1452(a). *See, e.g., Lipoderm Inst., Inc. v. Moca Holdings, LLC*, No. CV 10-02389-RGK, 2010 WL 1708848, at *1 (C.D. Ca. April 27, 2010) (where the defendants had removed an action based upon § 1452(a), the court stated that the "Ninth Circuit has held unequivocally that the removal statute is construed strictly against removal" and remanded the action to Los Angeles Superior Court because removal was improper). Finally, because federal courts strictly construe removal statutes, all doubts are resolved in favor of remand. *Gaus*, 980 F.2d at 564, 566 ("Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance.").

## II.  THE COURT DOES NOT HAVE "RELATED TO" BANKRUPTCY JURISDICTION PURSUANT TO 28 U.S.C. 1334(b)

Remand is mandated in this case because Defendants have failed to satisfy their burden of establishing that this Court has "related to" jurisdiction under 28 U.S.C. §§ 1334(b) and 1452(a). *See* Countrywide Removal at 2-3.

---

[3] *See, e.g., Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32, 123 S. Ct. 366 (2002) ("statutory procedures for removal are to be strictly construed."); *see also Gould v. Mutual Life Ins. Co. of N.Y.*, 790 F.2d 769, 773 (9th Cir. 1986) ("Removal jurisdiction is statutory and strictly construed."); *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) (holding that the burden of establishing federal jurisdiction for purposes of removal is on the party seeking removal, and the removal statute is strictly construed against removal jurisdiction).

First, because American Home's plan of liquidation has already been *confirmed*, this action cannot possibly have any effect on the American Home bankruptcy case, and therefore "related to" jurisdiction simply does not exist.

Second, even if the fact of the confirmation were not fatal, the mere fact that Defendant CHL has *potential* claims for indemnification and contribution against American Home, a *non-party* mortgage originator that is in bankruptcy, is too tenuous to give rise to "related to" jurisdiction. American Home is not a defendant in this action, and would not be a defendant even if it were not in bankruptcy. Nor will American Home be bound by any finding in this action. Put simply, even assuming American Home's bankruptcy were not in the post-confirmation stage, any claims of Defendant CHL against American Home would need to be litigated in a *further proceeding* before it could impact American Home's bankruptcy case.

## A.   THE TESTS FOR "RELATED TO" JURISDICTION IN THE NINTH CIRCUIT

Section 1452(a) permits the removal to federal court of any claim over which a federal district court has jurisdiction pursuant to § 1334. Jurisdiction of an action under § 1334 is in turn contingent upon the action's relationship to a bankruptcy case. Section 1334(b) provides:

> Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

In the Ninth Circuit, for purposes of assessing whether a civil proceeding is "related to" a bankruptcy action under § 1334(b), federal courts distinguish between whether the bankruptcy in question is pre-confirmation or post-confirmation (that is, whether or not a plan of liquidation or reorganization has

11

been confirmed).  Where a bankruptcy case is still in the pre-confirmation stage, the Ninth Circuit has adopted the general test enunciated by the Third Circuit in *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3rd Cir. 1984).  In *In re Fietz*, 852 F.2d 455, 457 (9th Cir. 1988), the Ninth Circuit held:

> The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy. Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

(citing *Pacor*, 743 F.2d at 994) (citations omitted; emphasis in original).

Where, however, "related to" jurisdiction is based on a bankruptcy case which is at the post-confirmation stage, the Ninth Circuit applies a more stringent standard.  Specifically, the Ninth Circuit has adopted the Third Circuit's "close nexus" test.  *See State of Montana v. Goldin (In re Pegasus Gold Corp.)*, 394 F.3d 1189, 1194 (9th Cir. 2005) (citing *In re Resorts Int'l, Inc.*, 372 F.3d 154, 161 (3d Cir. 2004)) ("We agree that post-confirmation bankruptcy court jurisdiction is necessarily more limited than pre-confirmation jurisdiction, and that the *Pacor* formulation may be somewhat overbroad in the post-confirmation context.").  Under the "close nexus" test, the inquiry is "whether there is a close nexus to the bankruptcy plan or proceeding sufficient to uphold bankruptcy court jurisdiction over the matter."  *Id.* at 1194 (quoting *Resorts Int'l*, 372 F.3d at 166-67).  Because the only steps left to be taken post-confirmation is the actual execution of the debtor's plan of liquidation or reorganization, only "matters affecting 'the interpretation, implementation, consummation, execution, or administration of the

confirmed plan will typically have the requisite close nexus.'" *Id.* (quoting *Resorts Int'l*, 372 F.3d at 167); *see also U.S. Brass Corp. v. Travelers Ins. Group (In re U.S. Brass Corp.)*, 301 F.3d 296, 304 (5th Cir. 2002) ("After a debtor's reorganization plan has been confirmed, the debtor's estate, and thus bankruptcy jurisdiction, ceases to exist, other than for matters pertaining to the implementation or execution of the plan.") (quoting *In re Craig's Stores of Tex., Inc.*, 266 F.3d 388, 390-91 (5th Cir. 2001)) (emphasis added).

     *In re Fietz*, 852 F.2d 455, is instructive. In that case, the bankruptcy debtor filed an adversary proceeding in bankruptcy court against both his spouse and an insurance company. The spouse filed a cross-claim against the insurance company in the proceeding. *Id.* The Ninth Circuit assumed that the cross-claim constituted community property belonging to the bankruptcy estate but concluded that the cross-claim was not "related to" the bankruptcy case. *Id.* at 458. The Ninth Circuit explained that the debtor's Chapter 13 plan had been confirmed before the cross-claim was filed, and the plan could not be modified. *Id.* at 458-59. Therefore, even if the cross-claim resulted in substantial recovery, the amount recovered would not have been available to creditors. *Id.* at 459. Thus, applying the close nexus test, the Ninth Circuit in *Fietz* held that there was no "related to" jurisdiction over the defendant's cross-claim, because it was filed after the Chapter 13 bankruptcy plan was confirmed and all of the property of the estate had already vested in the debtor, and therefore could not conceivably have affected the administration of the bankruptcy estate. *Id.* at 458-59.

     Even where the bankruptcy case is in pre-confirmation, the Ninth Circuit has imposed important limitations on the *Pacor* "conceivable effect" test, noting that the scope of "related to" jurisdiction is not limitless. *Pegasus*, 394 F.3d at 1194 n. 1 (rejecting the argument "that jurisdiction lies because the action could conceivably increase the recovery to the creditors", and holding that "[a]s the other circuits have noted, such a rationale could endlessly stretch a bankruptcy

13

court's jurisdiction.") (citations omitted); *Celotex Corp. v. Edwards*, 514 U.S. 300, 308-09 (1995) (noting that a bankruptcy court's "related to" jurisdiction "cannot be limitless"); *see also Kaonohi Ohana Ltd. v. Sutherland*, 873 F.2d 1302, 1307 n.6 (9th Cir. 1989) (federal courts "do [] not have unlimited jurisdiction over all third-party litigation potentially affecting the estate"). In this regard, the Third Circuit's discussion of *Pacor* in subsequent decisions is illuminating. Importantly for purposes of the this case, in *In re Federal-Mogul Global, Inc.*, 300 F.3d 368, 382 (3d Cir. 2002), the Third Circuit clarified *Pacor* by stating that the test articulated in *Pacor* is "whether the allegedly related lawsuit would affect the bankruptcy proceeding *without the intervention of yet another lawsuit*." (emphasis added). Thus, in *Federal-Mogul*, there was no "related to" subject matter jurisdiction because the defendant's indemnification claim against the bankrupt debtor had "not yet accrued and would require another lawsuit before [having] an impact on [the debtor's] bankruptcy proceeding." *Id. See also In re W.R. Grace & Co.*, 591 F.3d 164, 173 (3d Cir. 2009) (affirming *Pacor* and *Federal-Mogul*, and finding that federal courts lack subject matter jurisdiction over removed cases when the state court action has "only the potential to give rise to a separate lawsuit seeking indemnification from the debtor").

Here, applying either the more stringent post-confirmation test or the less strict pre-confirmation test leads to the conclusion that there is no "related to" bankruptcy jurisdiction.

**B.    THE COUNTRYWIDE DEFENDANTS HAVE FAILED TO ESTABLISH A "CLOSE NEXUS" BETWEEN THIS ACTION AND THE AMERICAN HOME MORTGAGE BANKRUPTCY CASE**

Remand is mandated under the "close nexus" test. Defendants claim that this action is related to American Home's bankruptcy because Defendants have claims for indemnification against American Home. Countrywide Removal at 3.

14

However, American Home's bankruptcy case is in the post-confirmation stage. American Home filed a voluntary petition for bankruptcy in the bankruptcy court for the District of Delaware on August 6, 2007, *more than three years ago*.  *See supra*, at 9.  On or about January 11, 2008, *more than one and a half years before this action was commenced*, Defendant CHL filed a proof of claim in the American Home bankruptcy proceeding.  *Id.*  On November 21, 2008, American Home filed its Disclosure Statement.  *Id.*  Thereafter, on November 25, 2008, American Home filed an Amended Plan of Liquidation.  *Id.*  The deadline to object to the Amended Plan was January 14, 2009.  *Id.*  No objections were received from any of the Countrywide Defendants in this action.  *Id.*  Based on this procedural history, *on February 23, 2009*, the bankruptcy court entered an Order of Confirmation confirming the Amended Plan of Liquidation.  *Id.*

Thus, this action could not have any possible effect on the American Home bankruptcy, regardless of the outcome of this action.  Because American Home's Amended Plan of Liquidation specifically provided for the liquidation of Defendant CHL's claims according to a protocol set forth in the plan (resulting in a recovery payout of approximately 1.3%) (*supra* at 9-10), and because the plan has now been *confirmed*, this action can have no effect on that bankruptcy.  This action will not require "the interpretation, implementation, consummation, execution, or administration" of the liquidation plan.  *See Pegasus*, 394 F.3d at 1194 (quoting *Resorts Int'l*, 372 F.3d at 166-67).

The connection here is especially remote because Plaintiff's Complaint alleges that Defendants themselves made false statements about their own due diligence of the loans and the mortgage originators' guidelines and underwriting practices.  ¶¶65-70; 72-79; 107-149.  No indemnification agreement with the Non-Party Originators would cover those misstatements. Nor will resolution of the issues raised by this action – whether Defendants are liable for misstatements and omissions in the offering documents – be determined by reference to the

1  liquidation plan or federal bankruptcy law.  *See Resorts Int'l*, 372 F.3d at 170

2  ("Resolution of this matter will not require a court to interpret or construe the

3  Plan or the incorporated Litigation Trust Agreement. Whether [defendant] was

4  negligent or breached its contract will not be determined by reference to those

5  documents.").  In short, the requisite "close nexus" between this action and

6  American Home's bankruptcy case does not exist.[4]

7      **C.    THE COUNTRYWIDE DEFENDANTS HAVE FAILED TO ESTABLISH A**
        **SUFFICIENT CONNECTION BETWEEN THIS ACTION AND THE**
8       **AMERICAN HOME MORTGAGE BANKRUPTCY CASE EVEN UNDER**
        **THE LESS STRINGENT "CONCEIVABLE EFFECT" TEST**
9

10     Even if the American Home bankruptcy case were not in post-

11  confirmation, and the less strict "conceivable effect" test stated in *Pacor* were to

12  apply, remand to California State Court would still be mandated.

13     Similar to the facts in *Pacor* itself, Plaintiff's claims for indemnification

14  and loan repurchases against Defendants are, at best, a mere precursor to a

15  potential third party claim against American Home, because this action would in

16  no way determine any rights, liabilities, or course of action against American

17  Home.  American Home is not a defendant in this action and is not otherwise

18  before this Court.  This action will not determine the rights or obligations of

19  American Home or any other bankrupt person or entity.  In short, this action will

20  have no effect on American Home's bankruptcy case without the intervention of

21  another lawsuit to determine the scope of Defendant CHL's purported claims for

22  indemnification and loan repurchases against American Home.  Even in the event

23  _____

24  [4] *See Kasim v. Equifax Info. Servs., LLC*, No. 08-627-HA, 2008 WL 4858267, at *3 (D. Or. Nov. 10, 2008) (appellant's bankruptcy and credit reporting claims held not to have a "close nexus" because they did not rely upon an "interpretation, implementation, consummation, execution, or administration" of a bankruptcy plan); *Duke v. Trans Union LLC*, No. 08-520-KI, 2008 WL 4319982, at *2 (D. Or. Sept. 16, 2008) (bankruptcy court properly concluded that it lacked subject matter jurisdiction over plaintiffs' Fair Credit Reporting Act claims against Trans Union because such claims did not raise issues necessitating an "interpretation, implementation, consummation, execution, or administration" of any agreements by the bankruptcy court).

of such a lawsuit, American Home would not be bound by *res judicata* or collateral estoppel, because it is not a party to this action.  Should Plaintiff prevail in this action, American Home would still be able to litigate any issue and adopt any position in response to any of the Defendants' claims.  *See Pacor*, 743 F.2d at 995 (finding that "the bankruptcy estate could not be affected in any way until the [ ] third party action is actually brought and tried.").   As such, even if the American Home bankruptcy were not in post-confirmation, this action would still only have a contingent and highly tenuous connection to the American Home bankruptcy case because of the necessity of an intervening lawsuit.

For the above reasons alone, remand to the Superior Court of California is mandated.[5]

## III.   DEFENDANTS' REMOVAL WAS IMPROPER BECAUSE THEY FAILED TO REMOVE THE ACTION TO A FEDERAL DISTRICT WHERE THE RELEVANT BANKRUPTCY CASE WAS PENDING

Above and beyond the failure by the Countrywide Defendants to establish "related to" jurisdiction, the Countrywide Removal fails at the threshold because the Countrywide Defendants failed to comply with the exacting requirements for removal under 28 U.S.C. § 1452(a), therefore mandating remand to California State Court.

As set forth in Section I above, removal statutes are construed strictly.  In this case,  § 1452(a) provides that a party may remove any claim or cause of

---

[5]  The Countrywide Defendants' contentions as to "related to" jurisdiction are especially suspect because Defendants have not even attempted to substantiate their claims for indemnification or contribution from American Home.   *See Foster Poultry Farms, Inc. v. IBM Corp.*, No. Civ-F-06-0680 AWI SMS, 2006 WL 2769944, at *9 (E.D. Cal. Aug. 1, 2006) (removing party has the burden of proof and must provide evidence of its right to indemnification through the agreements); *Lichtenfels v. Electro-Motive Diesel, Inc.*, No. 09-1590, 2010 WL 653859, at *5 (W.D. Pa. Feb. 22, 2010) (finding that the court lacked "related to" subject matter jurisdiction because defendants failed to provide evidence in the form of an indemnification agreement that would disprove the assumption that the agreement required an intervening proceeding to establish the right to indemnification).

1   action "to **the district court** for the district where such civil action is pending, **if**

2   **such district court has jurisdiction of such claim or cause of action under**

3   **section 1334 of this title**." (emphasis added).   Thus, there are two concurrent

4   requirements to effect a valid removal under § 1452(a).   First, the action must be

5   removed to the federal court for the district where the action being removed is

6   pending, *and second*, the federal court to which the action is removed must *also*

7   be the court that has bankruptcy jurisdiction of the claim or cause of action under

8   § 1334.

9       The language of §1452(a) is very deliberate.   By use of the singular form,

10   "district court", Congress recognized that, once a bankruptcy proceeding is

11   commenced in a particular district, the bankruptcy court in that district has

12   *exclusive* jurisdiction of the bankruptcy, so that any claims removed from a state

13   court action should be removed to *that bankruptcy court*.   The exclusive

14   jurisdiction of a bankruptcy court once a case is commenced is evidenced by 28

15   U.S.C. § 1334(e), which provides that "The district court in which a case under

16   title 11 is commenced or is pending shall have exclusive jurisdiction [] of all the

17   property, wherever located, of the debtor as of the commencement of such case,

18   and of property of the estate ... ."   Examining this provision, federal courts and

19   commentators alike have discussed the exclusive jurisdiction of a bankruptcy

20   court once a bankruptcy case is commenced in a particular district.   Thus, in *In re*

21   *Indian Motorcycle Co., Inc.*, 261 B.R. 800, 807-8 (Bankr. 1st Cir. 2001), the First

22   Circuit stated that:

23       Once a bankruptcy case is commenced in a proper forum court, that

24       court has exclusive jurisdiction over administration of the bankruptcy

25       estate. Congress's intent that only one court should have jurisdiction

26       over matters concerning the administration of the bankruptcy estate is

27       evidenced by the addition of 28 U.S.C. § 1334(e) which specifies that

28       the court in which a bankruptcy case is filed "has exclusive

18

1    jurisdiction of the property, wherever located, of the debtor as of the

2    commencement of such case, and of property of the estate." 28 U.S.C.

3    § 1334(e). This language resolves "not only jurisdictional disputes

4    between bankruptcy and state courts, but also disputes which might

5    arise among the districts." (citations omitted)

6        As the last sentence in the above quote makes clear, the purpose behind

7  confining jurisdiction to the bankruptcy court where the bankruptcy case was

8  commenced is to prevent jurisdictional disputes between the various district

9  courts. *See also* 1 Norton Bankruptcy Law and Practice 2d § 4:42, ("Section []

10  1334(d) [now § 1334(e)] attempts to resolve not only jurisdictional disputes

11  between bankruptcy and state courts, but also disputes which may arise among

12  the districts. By use of the singular form, 'District Court,' Congress attempted to

13  give significance to the exclusive jurisdiction of the particular District Court in

14  which a case is commenced or is pending"). Thus, consistent with § 1334(e), by

15  providing for the two concurrent conditions in § 1452(a), Congress explicitly

16  required that an action that is purportedly "related to" a bankruptcy case be

17  removed only to the district court where the bankruptcy case is pending.

18        This point was expressly considered by the court in *Cook v. Cook*, 220 B.R.

19  918 (Bankr. E.D. Mich. 1997) (approved on other grounds by *Blachy v. Butcher*,

20  221 F.3d 896, 909 (6th Cir. 2000)).  In that case, the defendants relied on

21  § 1452(a) to remove an action from Tuscola County Circuit Court in Michigan to

22  the federal court for the Eastern District of Michigan. *Id.* at 919.  However, the

23  bankruptcy proceeding to which the removed action purportedly "related" was

24  filed by the defendants themselves in the Northern District of California. *Id.*

25  Judge Spector in the Eastern District of Michigan noted that, under § 1334, the

26  district court in the Northern District of California, as the district court where the

27  bankruptcy case had commenced, had "exclusive jurisdiction of all the property,

28  wherever located, of the debtor ... , and of the property of the estate."  28 U.S.C.

§ 1334(e).   Because the Northern District of California had "exclusive jurisdiction" of the bankruptcy proceeding, Judge Spector held that the Eastern District of Michigan could not be deemed to be a "district court [with] jurisdiction of [the removed] claim or cause of action under Section 1334", as required by § 1452. *Cook,* 220 B.R. at 919-23.

In so holding, Judge Spector noted that § 1452(a) could have been properly invoked by the defendants if they had first transferred their bankruptcy proceeding from the Northern District of California to the Eastern District of Michigan. *Id.* at 919-20.  Judge Spector also rejected the defendants attempt to read out of existence the last clause of § 1452(a), rejecting the argument that it was sufficient for purposes of § 1452(a) that bankruptcy "jurisdiction lie in 'the district courts of the United States'" as opposed to the particular court to which the action had been removed.  *Id* at 920-1.   After a detailed and thoughtful analysis, Judge Spector concluded that the last clause could not be read out of existence in this manner, because that clause was significant in light of § 1334(e), which confers "exclusive jurisdiction" on the district court where the bankruptcy proceeding is commenced or is pending.  *Id.* at 921-3.

In the instant case, the Countrywide Defendants removed the action to this Court, *i.e.* the Central District of California.   However, in the Countrywide Removal, the Countrywide Defendants identify only one bankruptcy case as the basis for supplying bankruptcy "related to" jurisdiction, the American Home bankruptcy case, which is currently pending in the District of Delaware. Accordingly, because it is the bankruptcy court in the District of Delaware that has exclusive jurisdiction, not the Central District of California, the two concurrent conditions in § 1452(a) have not been satisfied and the Countrywide Removal was invalid.

## IV. EVEN IF THIS COURT HAD "RELATED TO" JURISDICTION, THE COURT SHOULD ABSTAIN FROM EXERCISING JURISDICTION AND REMAND AS A MATTER OF EQUITABLE DISCRETION

Even if the Countrywide Defendants' removal was valid and "related to" jurisdiction was found, this Court should exercise its broad discretion to remand this action "on any equitable ground." 28 U.S.C. § 1452(b). "This 'any equitable ground' remand standard is an unusually broad grant of authority. It subsumes and reaches beyond all of the reasons for remand under nonbankruptcy removal statutes." *McCarthy v. Prince*, 230 B.R. 414, 417 (BAP 9th Cir. 1999) (citing *Chambers v. Marathon Home Loans*, 96 B.R. 296, 299-300 (Bankr. E.D. Cal. 1989)). In the Ninth Circuit, a range of factors are considered in determining whether to remand on equitable grounds. These include the: (1) effect of remand, or the lack thereof, on efficient administration of estate; (2) extent to which state law issues predominate; (3) difficult or unsettled nature of applicable law; (4) presence of related state court or other non-bankruptcy proceeding; (5) jurisdictional basis, if any, other than debtor's bankruptcy filing; (6) degree of relatedness or remoteness of proceeding to main bankruptcy case; (7) substance, rather than form, of asserted core proceeding; (8) feasibility of severing state law claims from "core" bankruptcy matters; (9) burden on bankruptcy court's docket; (10) likelihood that commencement of proceeding involved forum shopping; (11) existence of right to jury trial; (12) presence in proceeding of non-debtor parties; (13) comity; and (14) possibility of prejudice to other parties.[6]

In *Citigroup*, 296 B.R. at 508, the plaintiffs filed suit under California securities and unfair competition laws, seeking to recoup losses sustained in

---

[6] *Brown v. Affiliated Computer Servs.*, No. C08-5367 FDB, 2008 WL 2856854, at *2 (W.D. Wash. July 21, 2008) (citing *In re Cytodyn of N.M., Inc.*, 374 B.R. 733, 738 (Bankr. C.D. Cal. 2007) and *Citigroup, Inc. v. Pac. Inv. Mgmt. Co.*, 296 B.R. 505, 508 (C.D. Cal. 2003)). *See also In re Tucson Estates*, 912 F.2d 1162 (9th Cir. 1990).

21

connection with their purchase of notes offered by Enron and Enron-sponsored entities. The defendant banks removed the cases. Despite finding that the actions were related to Enron's bankruptcy case and that Enron was contractually required to indemnify the defendant banks, the bankruptcy court granted the plaintiffs' motion to remand on equitable grounds, holding: (1) the proceedings were only remotely related to the bankruptcy proceedings; (2) none of the parties to the cases were debtors; (3) there was no basis for federal jurisdiction other than 28 U.S.C. § 1334; (4) state law issues predominated because the claims involved were exclusively California state law; and (5) California courts had more expertise in interpreting California law. *Id.* at 508-509.

Here, virtually all of the relevant equitable factors strongly favor remand. The **seventh** and **eighth** factors concerning "core" proceedings unquestionably support remand because this action is admittedly not a "core" proceeding,[7] and the non-core status of the proceedings weighs in favor of abstention.[8]   As discussed below, each of the remaining factors support remand:

**The first factor** – effect of remand on the efficient administration of American Home's bankruptcy estate – weighs in favor of remand.  As detailed *supra*, American Home is not a defendant in this action, Plaintiff is not seeking damages from American Home and this action will not have any impact on the American Home bankruptcy, especially where American Home's plan of liquidation already has been confirmed. *See Brown*, 2008 WL 2856854, at *2.

---

[7] Proceedings arising under title 11 and proceedings arising in a case under title 11 are referred to as "core" proceedings, while cases which are only "related to" a case under title 11 are referred to as "non-core" proceedings. *See In re Harris*, 590 F.3d 730, 737 (9th Cir. 2009).

[8] *See Cytodyn*, 374 B.R. at 740; *In re Eastport Assocs.*, 935 F.2d 1071, 1077 (9th Cir. 1991) ("the adversary proceeding is not a core proceeding, though it is a related proceeding … and the noncore status of the proceeding should have weighed in favor of abstention"); *Citigroup*, 296 B.R. at 508-509 (proceeding not based on any provision of title 11, and would have arisen regardless of Enron's bankruptcy).

1   ("Additionally, remand of this action will not . . . affect the administration of any

2   bankruptcy estate because it is the outcome of the case, not whether the claims are

3   tried in state or federal court, that may have repercussions in bankruptcy.").

4      **The fifth factor** – jurisdictional basis, other than 28 U.S.C. § 1334 –

5   supports remand.  Here, Plaintiff's claims are brought pursuant to §§ 25401,

6   25501, and 25504 of the California Corporations Code; §§ 1572 et seq. and 1709

7   et seq. of the California Civil Code; the common law; and §§ 11, 12(a)(2), and 15

8   of the Securities Act, 15 U.S.C. §§ 77k, 77l(a)(2) and 77o.  The Superior Court of

9   California has original jurisdiction over the subject matter of this action, as well

10  as jurisdiction pursuant to § 22 of the Securities Act.[9]  Accordingly, this factor

11  militates in favor of remand as "[t]here is no basis for federal jurisdiction other

12  than section 1334." *Citigroup*, 296 B.R. at 509.

13     **The sixth factor** – degree of relatedness to the bankruptcy proceedings –

14  strongly weighs in favor of remand.  As set forth in Section II *supra*, the

15  connection between this action and the American Home bankruptcy is extremely

16  remote.   Essentially, the only connection identified by the Countrywide

17  Defendants is that *one* Defendant, CHL, has claims against *one* originator in

18  connection with loans originated by that originator in *one* of the fourteen trusts

19  that are the subject of this action.[10]

20     **The tenth factor** – forum shopping – supports remand.  Plaintiff properly

21  commenced this action in State Court pursuant to that Court's original jurisdiction

22

---

23  [9] "Except as provided in section 77p(c) of this title, no case arising under this

24  subchapter and brought in any State court of competent jurisdiction shall be removed to any court of the United States."   15 U.S.C. § 77v(a); *Luther v.*

25  *Countrywide Home Loans Servicing LP*, 533 F.3d 1031, 1033-34 (9th Cir. 2008) (holding that § 22(a) of the Securities Act explicitly precludes the removal of

26  class actions asserting Securities Act claims from state to federal court).

27  [10] *See Citigroup*, "[t]hese proceedings, which do not involve Enron, Enron-related entities, or any of their respective officers or directors, are only remotely related

28  to the bankruptcy proceedings. The exclusively state law claims are non-core . . . . None of the parties to these cases are debtors." 296 B.R. at 509.

as well as Congress' grant of concurrent jurisdiction to State courts. *See Luther*, 533 F.3d at 1032. On the other hand, Defendants would prefer to litigate in federal court. Defendants' motivation is clear. First, the discovery stay pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA") does not apply to State court actions. Second, a jury trial in California would require less than a unanimous verdict. Defendants' attempted forum shopping favors remand. *See Cytodyn*, 374 B.R. at 741.

**The eleventh factor** – the right to a jury trial – favors equitable remand. Plaintiff requested a jury trial in Superior Court. To the extent Defendants at a later stage assert that this action should be transferred to a bankruptcy court, no jury trial may be available. *Citigroup*, 296 B.R. at 509 ("plaintiffs have demanded a jury trial, which cannot be provided by the bankruptcy court").

**The twelfth factor** – the presence of non-debtor parties – strongly weighs in favor of remand. Indeed, all of the parties to this action are non-debtors, and in cases involving non-debtors, courts have not hesitated to remand actions such as this to state court on equitable grounds. *See, e.g.*, *McCarthy*, 230 B.R. 414; *Citigroup*, 296 B.R. 505. Critically, American Home is not a party, and would not have been a party even absent its bankruptcy. The presence of strictly non-debtor parties favors remand. *See Cytodyn*, 374 B.R. at 741.

**The fourteenth factor** – the possibility of prejudice to other parties in this action – favors remand. Here, Plaintiff chose to sue Defendants in California Superior Court, a choice which is accorded great deference under California law. *See Ford Motor Co. v. Ins. Co. of N. Am.*, 35 Cal. App. 4th 604, 610-611 (1995) ("Notwithstanding defendants' argument to the contrary, it remains the case in this state that the plaintiff's choice of forum is entitled to great weight even though the plaintiff is a nonresident."). Under the circumstances, "[i]n the event any prejudice to the parties exists it is to the involuntarily removed parties that chose the state court as their forum of choice." *Brown*, 2008 WL 2856854, at *2.

24

Finally, the **second** (predominance of state law issues), **third** (unsettled state law issues), **fourth** (related proceedings in state court), **ninth** (burden on the district court's docket) and **thirteenth** (comity) factors are neutral and neither weigh in favor nor against remand.

Applying all of the above equitable factors, recent decisions in the Ninth Circuit have held that while federal subject matter jurisdiction may exist, equitable factors required remand to state court. See *Brown*, 2008 WL 2856854, at *2-3; *Cytodyn*, 374 B.R. at 738; *Parke v. Cardsystems Solutions, Inc.*, No. C06-4857 WHA, 2006 WL 2917604, at *4-6 (N.D. Cal. Oct. 11, 2006).

## CONCLUSION

For the foregoing reasons, Plaintiff ABP respectfully requests that the Court remand the action to the Superior Court of California, County of Los Angeles.

Dated:  October 29, 2010                    BLECHER & COLLINS, P.C.


                                            and

                                            GRANT & EISENHOFER P.A.



                                            By: _____ /S/ _____
                                                 MAXWELL M. BLECHER
                                                 Attorneys for Plaintiff
                                                 STICHTING PENSIOENFUNDS ABP

#44223