1  Maxwell M. Blecher (SBN 26202)
   mblecher@blechercollins.com
2  Maryann R. Marzano (SBN 96867)
   mmarzano@blechercollins.com
3  BLECHER & COLLINS, P.C.
   515 South Figueroa St., Ste. 1750
4  Los Angeles, CA 90071
   Telephone:  (213) 622-4222
5  Facsimile:   (213) 622-1656

6  Jay W. Eisenhofer, Esq. (*pro hac vice*)
   jeisenhofer@gelaw.com
7  Geoffrey C. Jarvis, Esq. (*pro hac vice*)
   gjarvis@gelaw.com
8  Hung G. Ta, Esq. (*pro hac vice*)
   hta@gelaw.com
9  Deborah A. Elman, Esq. (*pro hac vice*)
   delman@gelaw.com
10 GRANT & EISENHOFER P.A.
   485 Lexington Avenue
11 New York, New York 10017
   Telephone: (646) 722-8500
12 Facsimile: (646) 722-8501

13 *Attorneys for Plaintiff Stichting Pensioenfonds ABP*

14

15  **UNITED STATES DISTRICT COURT**

    **CENTRAL DISTRICT OF CALIFORNIA –WESTERN DIVISION**
16

| | |
|---|---|
| 17  STICHTING PENSIOENFONDS ABP, | )  Case No. CV 10-07275-MRP |
| 18                      *Plaintiff* | )  (MANx) |
| 19          v. | )  **PLAINTIFF'S REPLY** |
| 20 | )  **MEMORANDUM OF POINTS** |
| 21  COUNTRYWIDE FINANCIAL | )  **AND AUTHORITIES IN** |
| 22  CORPORATION; COUNTRYWIDE | )  **FURTHER SUPPORT OF** |
|     HOME LOANS, INC.; CWALT, INC.; | )  **MOTION TO REMAND THIS** |
| 23  CWMBS, INC.; CWABS, INC.; | )  **ACTION TO CALIFORNIA** |
|     CWHEQ, INC.; COUNTRYWIDE | )  **STATE COURT** |
| 24  CAPITAL MARKETS; | ) |
| 25  COUNTRYWIDE SECURITIES | )  DATE:    December 20, 2010 |
| 26  CORPORATION; BANK OF AMERICA | )  TIME:    11:00 a.m. |
|     CORP.; NB HOLDINGS | )  CTRM:    12 |
| 27 | )  JUDGE:   Hon. Mariana R. Pfaelzer |
| 28  (Caption continued on next page) | ) |

CORPORATION; DEUTSCHE BANK )
SECURITIES INC.; UBS SECURITIES, )
LLC; GREENWICH CAPITAL )
MARKETS, INC. A.K.A. RBS )
GREENWICH CAPITAL; BARCLAYS )
CAPITAL INC.; STANFORD L. )
KURLAND; DAVID A. SPECTOR; )
ERIC P. SIERACKI; N. JOSHUA )
ADLER; RANJIT KRIPALANI; )
JENNIFER S. SANDEFUR; and DAVID )
A. SAMBOL, )
)
                    *Defendants.*  )

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................... ii

PRELIMINARY STATEMENT .................................................................. 1

ARGUMENT ............................................................................................. 2

I.   THIS ACTION IS NOT "RELATED TO" THE AMERICAN HOME BANKRUPTCY CASE ................................................................... 2

  A.   COUNTRYWIDE'S CLAIMS AGAINST AMERICAN HOME WERE RESOLVED BY AMERICAN HOME'S CONFIRMED AMENDED PLAN OF LIQUIDATION ................................................................... 3

    1.   All Of Defendant CHL's Claims Were Addressed In The American Home Amended Plan Of Liquidation ................... 4

    2.   The Amended Plan Of Liquidation Became Effective As Of November 30, 2010, And Distributions Of Property And Cash Have Already Commenced. .................................. 7

    3.   CHL's Indemnification Rights Are Not "Automatic" ........... 9

  B.   THE CLOSE NEXUS TEST APPLIES TO THIS CASE ............................. 13

II.   EQUITABLE REMAND IS WARRANTED ........................................... 17

III.  DEFENDANTS' REMOVAL WAS IMPROPER BECAUSE THEY FAILED TO REMOVE THE ACTION TO A FEDERAL DISTRICT WHERE THE RELEVANT BANKRUPTCY CASE WAS PENDING .. 19

CONCLUSION ........................................................................................ 22

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO REMAND**

# TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE(S)**

*Abrego Abrego v. The Dow Chem. Co.*,
   443 F.3d 676 (9th Cir. 2006) ............................................................ 3

*Air Cargo, Inc. Litig. Trust v. i2 Tech., Inc. & Mercer Mgmt. Consulting, Inc. (In re Air Cargo, Inc.)*,
   401 B.R. 178 (Bankr. D. Md. 2008) ............................................... 16

*Belcufine v. Aloe*,
   112 F.3d 633 (3d Cir. 1997) ........................................................... 11

*Boston Reg'l Med. Ctr., Inc. v. Reynolds (In re Boston Reg'l Med. Ctr., Inc.)*,
   410 F.3d 100 (1st Cir. 2005) .................................................... 14, 15

*Celotex Corp. v. Edwards*,
   514 U.S. 300 (1995) ........................................................................ 15

*Chambers v. Marathon Home Loans*,
   96 B.R. 296 (Bankr. E.D. Cal. 1989) ............................................. 18

*The CIT Group/Equip. Fin. v. BDO Seidman, LLP.*,
   Civ. A. 09-431, MDL No. 2021, slip op. (W.D. Pa. July 21, 2009) .............. 15

*City of Ann Arbor Employees' Ret. Sys. v. Citigroup Mortgage Loan Trust Inc.*,
   572 F. Supp. 2d 314 ( E.D.N.Y. 2008) .............................................. 9

*City of Ann Arbor Employees' Ret. Sys. v. Citigroup Mortgage Loan Trust, Inc.*,
   No. CV 08-1418, 2008 U.S. Dist. LEXIS 78037 (E.D.N.Y. Oct. 6, 2008) ...... 9

*Cline v. First Nationwide Mortgage Corp. (In re Cline)*,
   282 B.R. 686 (W.D. Wash. 2002) .................................................... 21

*In re Cross Media Mktg. Corp.*,
   367 B.R. 435 (Bankr. S.D.N.Y. 2007) ............................................. 16

*In re Cytodyn of N.M., Inc.*,
   374 B.R. 733 (Bankr. C.D. Cal. 2007) ............................................ 18

*In re Dow Corning Corp.*,
   86 F.3d 482 (6th Cir. 1996) ............................................................ 13

ii

*In re Eastport Assocs.,*
   935 F.2d 1071 (9th Cir. 1991) ........................................................................ 18

*In re Enron Corp.,*
   296 B.R. 505 (C.D. Cal. 2003) ...................................................................... 13

*In re Federal-Mogul Global, Inc.,*
   300 F.3d 368 (3d Cir. 2002) .................................................................. 11, 13

*In re Fietz,*
   852 F.2d 455 (9th Cir. 1988) .......................................................................... 2

*Ford Motor Co. v. Ins. Co. of N. Am.,*
   35 Cal. App. 4th 604 (1995) .......................................................................... 18

*General Elec. Capital Corp. v. Pro-Fac Coop.,*
   No. 01 Civ. 10215, 2002 WL 1300054 (S.D.N.Y. June 11, 2002) ................ 10

*Harker v. Wells Fargo Bank, N.A. (In re Krause),*
   414 B.R. 243 (Bankr. S.D. Ohio 2009) ..................................................... 20, 21

*In re Harris,*
   590 F.3d 730 (9th Cir. 2009) ........................................................................ 18

*Hendricks v. Detroit Diesel Corp.,*
   No. C 09-3939 EMC, 2009 WL 4282812 (N.D.Cal. Nov. 25, 2009) ............ 12

*In re Indian Motorcycle Co., Inc.,*
   261 B.R. 800 (Bankr. 1st Cir. 2001) ............................................................. 20

*In re Insilco Techs., Inc.,*
   330 B.R. 512 (Bankr. D. Del. 2005) .............................................................. 15

*Lipoderm Inst., Inc. v. Moca Holdings, LLC,*
   No. CV 10-02389-RGK, 2010 WL 1708848 (C.D. Ca. April 27, 2010) .......... 3

*Luther v. Countrywide Home Loans Servicing LP,*
   533 F.3d 1031, 1032 (9th Cir. 2008) ............................................................. 18

*Mass. Bricklayers v. Deutsche Alt-A Sec., Inc.,*
   399 B.R. 119 (E.D.N.Y. 2009) ........................................................................ 9

*McCarthy v. Prince,*
   230 B.R. 414 (BAP 9th Cir. 1999) ............................................................ 2, 17

iii

*Noletto v. Nationsbanc Mortgage Corp.*,
    244 B.R. 845 (Bankr. S.D. Ala. 2000) ....................................................... 20, 21

*Pacific Life Ins. Co. v. J.P. Morgan Chase & Co.*,
    No. Civ. 03-813, 2003 WL 22025158 (C.D. Cal. June 30, 2003)................. 13

*Pacor, Inc. v. Higgins*,
    743 F.2d 984 (3rd Cir. 1984)....................................................... 11, 12

*In re Pegasus Gold Corp. (In re Pegasus)*,
    394 F.3d 1189 (9th Cir. 2005) .........................................2, 14, 16-17

*Retirement Sys. of Alabama v. JPMorgan Chase & Co.*,
    285 B.R. 519 (M.D. Ala. 2002) ........................................................ 10

*Romagosa v. Van Diepen (In re Van Diepen)*,
    No. 6:07-cv-1835, 2008 U.S. Dist. LEXIS 107506 (M.D. Fla. Sept. 30,
    2008) ........................................................................................ 15

*In re Resorts Int'l, Inc.*,
    372 F.3d 154 (3d Cir. 2004) ............................................... 14, 16-17

*SenoRx, Inc. v. Coudert Bros. LLP*,
    No. C-07-1075 SC, 2007 WL1520966 (N.D. Cal. May 24, 2007) ................ 13

*In re Sizzler Rests. Int'l, Inc.*,
    262 B.R. 811 (Bankr. C.D. Cal. 2000) ...................................... 12, 13

*Steel Workers Pension Trust v. Citigroup, Inc.*,
    295 B.R. 747 (E.D. Pa. 2003)....................................... 9, 10, 11, 12

*Valdez v. Allstate Ins. Co.*,
    372 F.3d 1115 (9th Cir. 2004) ......................................................... 3

*Williams v. Sears, Roebuck & Co. (In re Williams)*,
    244 B.R. 858 (S.D. Ga. 2000), *aff'd*, 34 Fed. Appx. 967 (11th Cir. 2002)..... 20

*In re W.R. Grace & Co.*,
    366 B.R. 295, 300-01 (Bankr. D. Del. 2007) ................................... 13

*In re W.R. Grace & Co.*,
    591 F.3d 164 (3d Cir. 2009) ........................................................... 12

iv

STATUTES

15 U.S.C. § 77v(a) ............................................................................ 17, 18

28 U.S.C. § 1447(c) ................................................................................. 1

28 U.S.C. § 1452 ............................................................................ *passim*

Plaintiff Stichting Pensioenfonds ABP ("Plaintiff" or "ABP")[1] by its attorneys, respectfully submits this Reply Memorandum of Points and Authorities in Further Support of Motion to Remand This Action to California State Court in response to the Countrywide Defendants' Memorandum of Points and Authorities in Opposition to Plaintiff's Motion to Remand This Action to California State Court ("Opposition" or "Opp. Mem.") and in further support of Plaintiff's Motion pursuant to 28 U.S.C. § 1447(c) to Remand this Action to the Superior Court of the State of California, County of Los Angeles.

## PRELIMINARY STATEMENT

Defendants' Opposition demonstrates on its face why this action should be remanded.  As set forth in Plaintiff's opening memorandum of law (Plaintiff's "Opening Brief" or "Opening Br."), remand is appropriate because this case is not "related to" the bankruptcy case of non-party American Home Mortgage Corp. ("American Home") that is pending in Delaware.  In their Opposition, Defendants fail to overcome the hurdle posed by the fact that all of their claims against American Home have now been *resolved* pursuant to American Home's bankruptcy court-confirmed Amended Plan of Liquidation.  Under that Amended Plan of Liquidation, the Bankruptcy Court for the District of Delaware confirmed an allocation by which Defendant CHL stood to recover approximately 1.3% of its claims.

Critically, on *November 30, 2010*, the "Effective Date" of the Amended Plan of Liquidation occurred, so that Defendant CHL became bound by the plan and was enjoined from further pursuing any other claims against American Home's bankruptcy estate.  As of the Effective Date, distribution of cash and property commenced under American Home's Amended Plan of Liquidation.  In

---

[1] Defined terms used throughout this Reply have the same meanings as used in Plaintiff's Opening Brief, unless otherwise specified.

1

short, there is simply no conceivable way by which CHL could now affect the size of the American Home bankruptcy estate or the distributions to be made to other creditors.  Notwithstanding its unsupported protestations to the contrary, Defendant CHL has no further recourse against the American Home bankruptcy estate other than CHL's entitlement to its allocation under the Amended Plan of Liquidation.  Accordingly, this action should be remanded.

Even if there were "related to" jurisdiction, and there is not, Defendants have failed to demonstrate why remand is not warranted pursuant to the Court's equitable powers under 28 U.S.C. § 1452(b).  *See McCarthy v. Prince*, 230 B.R. 414, 417 (BAP 9th Cir. 1999).  Moreover, Defendants' Opposition fails in its attempt to demonstrate that Defendants' removal was proper under 28 U.S.C. § 1452(a), which requires that a state court action be removed not just to the court in the district where the state court action was pending, but also to the district where the bankruptcy case supplying the "related to" jurisdiction is pending (in this case, the District of Delaware).  As set forth below, both of these grounds independently mandate remand of this action to the Superior Court of California.

## ARGUMENT

## I.   THIS ACTION IS NOT "RELATED TO" THE AMERICAN HOME BANKRUPTCY CASE

The Ninth Circuit has articulated two tests for assessing whether an action is "related to" a bankruptcy case under § 1334(b): the "conceivable effects" test, *In re Fietz*, 852 F.2d 455, 457 (9th Cir. 1988), and the "close nexus" test.  *In re Pegasus Gold Corp. (In re Pegasus)*, 394 F.3d 1189, 1194 (9th Cir. 2005). Defendants assert that the conceivable effects test applies here, notwithstanding the advanced, *post-confirmation* stage of the American Home bankruptcy case. Although Defendants are wrong (as set forth in Section I.B *infra*), that is not important here because Defendants cannot even meet their burden under the more

PLAINTIFF'S REPLY IN SUPPORT OF
MOTION TO REMAND

lenient conceivable effects test of demonstrating that this action is "related to" the American Home bankruptcy case pending in the District of Delaware.[2]

### A. Countrywide's Claims Against American Home Were Resolved By American Home's Confirmed Amended Plan Of Liquidation

Defendants' Opposition rests on the contention that Defendant CHL's claims against American Home "will affect CHL's *pro rata* share of the assets available for distribution in American Home's bankruptcy" and "the administration of the American Home bankruptcy." Opp. Mem. at 1. Defendants are wrong.

Even though they bear the burden of showing that removal is valid, Defendants are notably silent as to the status of the claims that they have purportedly filed in the American Home bankruptcy case; how those claims have been treated so far; the status of the American Home bankruptcy case; and what payments Defendant CHL has so far received from the American Home bankruptcy estate. This is insufficient to justify removal. In fact, the reason for their silence is clear. As shown below, the American Home bankruptcy has reached its concluding stages and nothing that happens in this case can impact in any material way the amount that CHL or any other creditor receives in that case.

---

[2] *See Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 684 (9th Cir. 2006) (It is "a longstanding, near-canonical rule that the burden on removal rests with the removing defendant.") (citations omitted). Removal statutes are strictly construed against removal, and any doubts are resolved in favor of state court jurisdiction and remand. *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004); *Lipoderm Inst., Inc. v. Moca Holdings, LLC*, No. CV 10-02389-RGK, 2010 WL 1708848, at *1 (C.D. Ca. April 27, 2010) (where the defendants had removed an action based upon § 1452(a), the court stated that the "Ninth Circuit has held unequivocally that the removal statute is construed strictly against removal" and remanded the action to Los Angeles Superior Court because removal was improper).

### 1.    All Of Defendant CHL's Claims Were Addressed In The American Home Amended Plan Of Liquidation

As Defendants acknowledge, on February 23, 2009, the Bankruptcy Court for the District of Delaware entered an order confirming American Home's Amended Plan of Liquidation.  Under the Amended Plan of Liquidation, all of the "Claims" against and "Interests" in American Home and its affiliated debtors (except for certain administrative claims, debtor-in-possession financing claims and tax claims not relevant here) were classified according to a ranking system for purposes of voting on the plan, and confirmation and distribution (payment) under the plan.  *See* Declaration of Brian C. Devine in Support of Countrywide Defendants' Opposition to Plaintiff's Motion to Remand This Action to California State Court ("Devine Decl"), Ex. 4 at 17-22.  The Amended Plan of Liquidation then set forth, in Article 4, the treatment of these classified claims and interests, including the manner in which they were to be settled, for example, by the payment of cash.

In this case, Defendants based their removal on two categories of claims that Defendant CHL purportedly possessed against American Home arising out of this Action – "indemnification" claims (*See* Notice of Removal filed in this action on September 29, 2010, ¶12) and claims against American Home for the "repurchase" of mortgage loans that underlie a portion of CHL Mortgage Pass-Through Trust 2006-HYB1 (the "2006-HYB1 Trust") (*id.* ¶13).  According to Defendants, CHL filed a proof of claim with respect to these claims on August 28, 2008.  *See* Devine Decl., Ex. 2.

Defendants have now completely abandoned their reliance upon "repurchase" claims as a basis for "related to" jurisdiction as they do not even mention, let alone discuss, these claims in their Opposition.  In their Opposition, Defendants now fasten on Defendant CHL's remaining set of claims, the so-called "indemnification" claims, as providing the basis for "related to"

**PLAINTIFF'S REPLY IN SUPPORT OF
MOTION TO REMAND**

bankruptcy jurisdiction.  Opp. Mem. at 4-14.  But that argument fails, because the Amended Plan of Liquidation specifically addressed all of Defendant CHL's claims against American Home, including these "indemnification" claims.

Specifically, the American Home Amended Plan of Liquidation provided for a category of claims called "Class 5C(1)", described in the Amended Plan of Liquidation as consisting of "Unsecured Claims against AHM Corp. other than the BofA Syndicate Unsecured Claim and Borrower Claims."  Devine Decl., Ex. 4 at 20.  The Amended Plan of Liquidation explained that claims in Class 5C(1) may include "EPD Claims"[3] and "Breach of Warranty Claims."[4]   This latter category encompasses precisely the types of "indemnification" claims asserted by Defendant CHL.

Defendants explain that CHL's indemnification claims arise under Section 3.4 of a Mortgage Loan Purchase and Interim Servicing Agreement dated November 26, 2003, under which American Home agreed to:

> indemnify [Defendant CHL] and hold it harmless against any losses,
> damages, penalties, fines, forfeitures, judgments and any related costs

---

[3] The Amended Plan of Liquidation defined an EPD Claim to mean "(i) a Claim arising from any provision or provisions in a loan purchase agreement that obligated a Debtor to repurchase a loan if the borrower defaulted on a payment due within either a specified period of time or a specified number of payments after the loan was sold or (ii) a Securitization EPD Representation Claim."  Devine Decl., Ex. 4 at 8-9.  A "Securitization EPD Representation Claim" is defined to mean "a Claim asserted by or on behalf of a securitization trust, arising from the breach of any representation in a loan purchase agreement that obligated a Debtor to repurchase a loan if the loan was in payment default at or prior to the time it was sold to the trust (for such time periods as are specified in the relevant securitization documents)."  Id. at 14.

[4] The Amended Plan of Liquidation also defined a "Breach of Warranty Claim" to mean "a Claim (other than an EPD Claim) for breach of a representation or warranty arising under any provision or provisions of a loan purchase agreement with respect to a given loan."  Id. at 5.

including, without limitation, reasonable and necessary legal fees, resulting from any claim, demand, defense or liability based upon or arising out of any act or omission on the part of [American Home] in receiving, processing, funding or servicing any Mortgage Loan, or *from any assertion based on, grounded upon or resulting from a breach or alleged breach of any of [American Home's] representations and warranties contained in this Article III*.

Opp. Mem. at 5-6; Devine Decl., Ex. 3 at 19 (emphasis added).  As Section 3.4 itself makes clear, this type of claim is precisely the type of claim encompassed within the broad definition of "Breach of Warranty Claim", because a "Breach of Warranty Claim" means "*a Claim … for breach of a representation or warranty arising under any provision or provisions of a loan purchase agreement with respect to a given loan*."[5] (emphasis added)

Notably, although Defendants contend that CHL's indemnification claims are not examples of "EPD Claims" or "Breach of Warranty Claims" (Opp. Mem. at 12-13), Defendants do not even attempt to identify an alternative category into which their indemnification claims could possibly be classified.  This silence is telling.

Defendant CHL's indemnification claims were thus classified under Class 5C(1) and were treated in accordance with the distribution provisions set forth in Article 4, Section G of the Amended Plan of Liquidation, Devine Decl., Ex. 4.  Not only did the Amended Plan of Liquidation contain provisions for determining

---

[5] Furthermore, it should be noted, a "Claim" is defined to mean "a claim against any of the Debtors or their Estates, including, without limitation []any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured …", thus clearly encompassing contingent claims such as CHL's indemnification claims in this instance.

the amount of distributions to holders of Class 5C(1), the Amended Plan of Liquidation also set forth a detailed protocol by which these particular claims were to be "liquidated", assessed and then paid out to creditors asserting these claims. Devine Decl., Ex. 4 at 46.  Specifically, the Amended Plan of Liquidation required each claimant to submit, in the form of answers to a questionnaire, information sufficient to allow the calculation of the amount of the claim that would be allowed.  *Id.* at 48-9.  For EPD Claims, the claimant was required to submit information as to the "loan type, borrower payment history, status and UPB [unpaid principal balance] for the loan." *Id.* at 46.  For "Breach of Warranty Claims", the claimant was required to provide information as to the date of origination of the loan and the unpaid principal balance of the loan.  *Id.* at 46-7. The Amended Liquidation Plan set forth specific cut-off dates for the provision of this information.  *Id.* at 49.  Thus, the American Home Amended Plan of Liquidation contained a comprehensive scheme for addressing the indemnification claims of Defendant CHL.

> **2.  The Amended Plan Of Liquidation Became Effective As Of November 30, 2010, And Distributions Of Property And Cash Have Already Commenced.**

On November 30, 2010, the Amended Plan of Liquidation became "effective", meaning that distributions of property and cash, as determined by the plan, have now commenced.  *See* Further Declaration of Geoffrey C. Jarvis in Support of Plaintiff's Motion to Remand This Action to California State Court (the "Jarvis 2d Decl."), Ex. A.  According to American Home's Disclosure Statement, the estimated recovery on claims in Class 5C(1) (which encompass CHL's claims in the bankruptcy) was 1.3%.  Jarvis Decl. Ex. B. at 9.[6]

---

[6] "Jarvis Decl." refers to the Declaration of Geoffrey C. Jarvis, dated October 29, 2010.

1      Importantly, on the Effective Date, the provisions of the Amended Plan of

2   Liquidation became binding on all holders of claims against American Home,

3   including Defendant CHL.  Jarvis 2d Decl., Ex. A ("Pursuant to section 1141(a)

4   of the Bankruptcy Code, the provisions of the Plan and the Confirmation Order

5   shall bind … all holders of claims against or Equity Interests in the Debtors that

6   arose before or were filed as of the Effective Date … .")  As the Amended Plan of

7   Liquidation explains, on the Effective Date, a "Plan Injunction" was triggered

8   under which persons holding claims against the bankruptcy estate became

9   "permanently enjoined … on account of such Claims" from "commencing or

10   continuing in any manner, directly or indirectly, any action or other proceeding"

11   against the bankruptcy estate, and from "enforcing, attaching, executing,

12   collecting, or recovering in any manner, directly or indirectly, any judgment,

13   award, decree, or order" against the bankruptcy estate.  Devine Decl., Ex. 4 at 86-

14   89.

15      Not only did all holders of claims become bound on the Effective Date to

16   the provisions of the plan, the Amended Plan of Liquidation also made clear that,

17   other than the claims identified and classified in the plan, no other claims would

18   be allowed or paid.  Specifically, the Amended Plan of Liquidation stated that the

19   "Plan Trustee shall not distribute any Cash or other property allocated to a Class,

20   member of a Class, or a Holder of a Claim to any other Class, member thereof, or

21   Holder of any other Claim, except as expressly specified in the Plan or the

22   Confirmation Order."  *Id.* at 23.  Further, "EXCEPT AS SPECIFICALLY SET

23   FORTH IN THIS PLAN, NO DISTRIBUTIONS WILL BE MADE AND NO

24   RIGHTS WILL BE RETAINED ON ACCOUNT OF (I) ANY CLAIM THAT IS

25   NOT AN ALLOWED CLAIM OR (II) ANY INTEREST."  *Id* at 24 (emphasis in

26   original).

27      Thus, as of November 30, 2010, Defendant CHL can no longer add to its

28   existing claims against American Home, regardless of the outcome of this

8

litigation.  Defendant CHL is now bound by American Home's Amended Plan of Liquidation, and payments under that plan have already commenced.  Therefore, Defendant CHL's indemnification claims cannot sustain "related to" bankruptcy jurisdiction, whether under the "conceivable effects" test or the "close nexus" test.[7]

### 3.   CHL's Indemnification Rights Are Not "Automatic"

In support of their argument that CHL's indemnification claims are "related to" American Home's bankruptcy case, Defendants assert that CHL's indemnification rights automatically create an obligation on the part of American Home, and thus establish "related to" jurisdiction.  Opp. Mem. at 8.  Apart from the fact that these claims have now been resolved (as discussed above), so that they cannot sustain "related to" bankruptcy jurisdiction in any event, Defendants' assertion is plainly wrong.

To begin, the law is quite clear that not all indemnification agreements between a defendant in a civil action and a non-party bankrupt debtor automatically create "related to" jurisdiction under § 1334(b), since "[o]nly when the right to indemnification is established and is not contingent on the filing of a

---

[7]  This is a key distinction between this case and the two recent decisions from the Eastern District of New York cited by Defendants.  In both *City of Ann Arbor Employees' Ret. Sys. v. Citigroup Mortgage Loan Trust, Inc.*, 572 F. Supp. 2d 314 (E.D.N.Y. 2008) and *Mass. Bricklayers v. Deutsche Alt-A Sec., Inc.*, 399 B.R. 119 (E.D.N.Y. 2009), the Court denied remand because, as of the time of the filing of the complaint, American Home's Plan of Liquidation had not even been filed.  *City of Ann Arbor Employees' Ret. Sys. v. Citigroup Mortgage Loan Trust, Inc.,* No. CV 08-1418, 2008 U.S. Dist. LEXIS 78037 (E.D.N.Y. Oct. 6, 2008) (denying reconsideration because plan of liquidation was filed after the complaint); *Mass. Bricklayers*, 399 B.R. at 123 (confirming *Ann Arbor*'s holding that filing of plan of liquidation after the complaint does not divest court of "related to" bankruptcy jurisdiction).  Here, in stark contrast, American Home's Plan of Liquidation and Amended Plan of Liquidation were both filed prior to the filing of Plaintiff's Complaint, and prior to Defendants' purported removal.

PLAINTIFF'S REPLY IN SUPPORT OF
MOTION TO REMAND

separate action is the case related to the bankruptcy proceeding." *See Steel Workers Pension Trust v. Citigroup, Inc.*, 295 B.R. 747, 753 (E.D. Pa. 2003). Thus, the court in *Steel Workers* noted that, "in performing the 'related to' jurisdiction analysis, the indemnification contract must be examined." *Id.*; *see also Retirement Sys. of Alabama v. JPMorgan Chase & Co.*, 285 B.R. 519, 529 (M.D. Ala. 2002) (claims of former directors and officers of WorldCom for indemnification and contribution did not justify "related to" jurisdiction because their impact on the bankruptcy estate was "speculative and premature" and would "not increase or decrease the size of [the bankruptcy] estate" but rather only alter relative rights of creditors); *General Elec. Capital Corp. v. Pro-Fac Coop.*, No. 01 Civ. 10215, 2002 WL 1300054, at *2 (S.D.N.Y. June 11, 2002) (single indemnity claim was an "insufficient" basis to establish "related to" jurisdiction).

Here, the indemnification provision identified by Defendants states that "[American Home] shall defend and indemnify [CHL] … from any assertion based on, grounded upon or resulting from a breach or alleged breach of any of the Seller's representations and warranties contained in this Article III." Opp. Mem. at 5-6, *citing* Section 3.4 of the Mortgage Loan Purchase and Interim Servicing Agreement. Section 3.4 does not provide for "automatic" indemnification because no judgment in this action, let alone the *fact* of this action, would result in automatic liability against American Home. Defendant CHL would still be obligated to bring an entirely separate proceeding against American Home to prove that it is entitled to indemnification. That is particularly so because American Home originated only a portion of the mortgage loans in *one of the fourteen trusts* from which Plaintiff bought its securities. Thus, it would not be immediately clear that the losses sustained by Plaintiff were directly attributable to the loans that American Home contributed to the trust, as opposed to the loans originated by any other originators, including Defendants themselves. Under these circumstances, American Home would no doubt contest any claim

10

PLAINTIFF'S REPLY IN SUPPORT OF
MOTION TO REMAND

1   for indemnification, necessitating that Defendant CHL bring a separate
2   proceeding to enforce its right to indemnification.

3       The cases cited by Defendants do not support their argument that a claim
4   for contractual indemnification automatically gives rise to "related to"
5   jurisdiction. *See* Opp. Mem. at 6-8. For example, their reliance on *Pacor, Inc. v.*
6   *Higgins*, 743 F.2d 984 (3rd Cir. 1984) and *Belcufine v. Aloe*, 112 F.3d 633, 636
7   (3d Cir. 1997), is misplaced. In *Pacor*, the Third Circuit explicitly held that until
8   a claim for indemnity is brought, there is no "related to" jurisdiction:

9       [T]he primary action between Higgins and Pacor would have no effect
10       on the Manville bankruptcy estate, and therefore is not "related to"
11       [the Manville] bankruptcy [proceeding]. At best, it is a mere precursor
12       to the potential third party claim for indemnification by Pacor against
13       Manville. ... Thus, the bankruptcy estate could not be affected in any
14       way until the Pacor-Manville third party action is actually brought and
15       tried.

16   *Pacor*, 743 F.2d at 995. Further, in *In re Federal-Mogul*, 300 F.3d 368, 382 (3d
17   Cir. 2002), the Third Circuit reiterated that:

18       The test articulated in *Pacor* for whether a lawsuit could
19       "conceivably" have an effect on the bankruptcy proceeding inquires
20       whether the allegedly related lawsuit would affect the bankruptcy
21       proceeding without the intervention of yet another lawsuit.

22       Subsequent lower court decisions within the Third Circuit have also made
23   clear that the mere existence of an indemnity provision in a contract does not, in
24   and of itself, confer related to jurisdiction. In *Steel Workers Pension Trust*, the
25   court addressed (and dispensed with) the contention that *Belcufine* and/or *Pacor*
26   stood for the proposition that indemnification rights are automatic, stating that
27   "the Third Circuit did not imply in *Pacor* ... that an indemnification agreement
28   instantly gives rise to 'related to' jurisdiction. Nor did it so hold in [*Belcufine*]."

11

1   295 B.R. at 751-52.  The *Steel Workers* court further held that "[i]f there was any

2   doubt about the application of the *Pacor* test, it was dispelled in *Federal-Mogul*

3   when the Third [Circuit] rejected the implication that indemnification agreements

4   *a fortiori* established 'related to' jurisdiction." *Id.*

5       More recently, the Third Circuit has commented that a clear contractual

6   right to indemnification, though potentially posing a direct threat to a bankruptcy

7   estate, may not necessarily be enough to make a proceeding related to the

8   bankruptcy.  *In re W.R. Grace & Co.*, 591 F.3d 164, 174, n.9 (3d Cir. 2009)

9   ("[W]e do not mean to imply that contractual indemnity rights are in themselves

10  sufficient to bring a dispute over that indemnity within the ambit of related-to

11  jurisdiction.  What will or will not be sufficiently related to a bankruptcy to

12  warrant the exercise of subject matter jurisdiction is a matter that must be

13  developed on a fact-specific, case-by-case basis.").  Thus, Defendants' reliance

14  on *Pacor* and *Belcufine* is clearly misplaced.

15      Defendants also cite *Hendricks v. Detroit Diesel Corp.*, No. C 09-3939

16  EMC, 2009 WL 4282812 (N.D. Cal. Nov. 25, 2009), but that decision is easily

17  distinguished because there was no disagreement in that case as to whether the

18  indemnification agreement at issue would cover the claims asserted against the

19  defendant – it was acknowledged by both parties that there was an

20  indemnification obligation.  In fact, the debtor had ***accepted*** a tender by defendant

21  of defense and indemnity of the claims at issue in that case, the debtor's counsel

22  defended them and the debtor paid for them until the debtor declared bankruptcy.

23  Defendants have not and could not offer such evidence in the instant case.

24      The facts of *In re Sizzler Rests. Int'l, Inc.*, 262 B.R. 811 (Bankr. C.D. Cal.

25  2001) also are inapposite.  *Sizzler* involved a post-confirmation suit brought by

26  the reorganized debtor, Sizzler, against a law firm which had represented the

27  debtor in state court personal injury cases.  The law firm counterclaimed against

28  the debtor and an officer of the debtor.  After the parties reached a stipulation

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO REMAND**

dismissing the counterclaims against the debtor, the law firm sought to dismiss its counterclaim against the officer without prejudice or to have the court permissively abstain from the counterclaim against the officer.  The court determined that the counterclaim against the officer was a core proceeding.  As an alternative ground for jurisdiction, the court held that the counterclaim was "related to" Sizzler's bankruptcy case because there was an indemnification which ran from the debtor to the officer, *and* the confirmed plan had explicitly provided that the bankruptcy court would retain jurisdiction to adjudicate the claim of indemnification.  *Id.* at 818-819.  No such provision appears in the American Home Amended Plan of Liquidation.[8]

## B.     The Close Nexus Test Applies To This Case

Although, as demonstrated above, the Court does not have "related to" bankruptcy jurisdiction under either the "conceivable effects" test or the "close nexus" test (and thus, it is strictly unnecessary to decide between the two tests),

---

[8] Defendants' remaining cases are distinguishable.  Critically, in *SenoRx, Inc. v. Coudert Bros. LLP*, No. C-07-1075 SC, 2007 WL 1520966 (N.D. Cal. May 24, 2007), the bankrupt limited liability partnership was a defendant in the civil litigation.  Thus, unlike here where American Home is not a defendant, the underlying debtor or bankrupt entity was a defendant in *Senorx, Inc.*  Similarly, in *In re Enron Corp.*, 296 B.R. 505, 508 (C.D. Cal. 2003), the underlying action sought recovery of losses sustained in connection with purchases of securities offered by the debtor, and it was undisputed that Enron was contractually obligated to indemnify defendants if they were found liable.  Finally, *Pacific Life Ins. Co. v. J.P. Morgan Chase & Co.,* No. Civ. 03-813, 2003 WL 22025158 (C.D. Cal. June 30, 2003) relied on (1) *Sizzler*, which is inapposite as set forth above; (2) a misinterpretation of *Pacor*, which has been clarified by the Third Circuit in *W.R. Grace*; and (3) *In re Dow Corning Corp.*, 86 F.3d 482 (6th Cir. 1996), a Sixth Circuit case.  *In re Dow Corning Corp.* is distinguishable because there, the non-debtor defendants joined in the removal and the court was concerned with the threat that thousands of indemnification and/or contribution claims posed to a successful reorganization.  Moreover, *In re Dow Corning Corp.* has been criticized by both *Federal-Mogul*, 282 B.R. at 307-309 and *In re W.R. Grace & Co.*, 366 B.R. 295, 300-01 (Bankr. D. Del. 2007), which the Ninth Circuit follows.

PLAINTIFF'S REPLY IN SUPPORT OF
MOTION TO REMAND

1   Defendants are, in any case, incorrect when they argue that the "close nexus" test

2   is inapplicable.   Defendants contend that the close nexus test adopted by the

3   Ninth Circuit in *In re Pegasus Gold Corp.*, 394 F.3d 1189 (9th Cir. 2005) (citing

4   *In re Resorts Int'l, Inc.*, 372 F.3d 154 (3d Cir. 2004)) is inapplicable because

5   those cases involved *reorganization* plans that had been confirmed, whereas

6   American Home's bankruptcy is governed by a plan of *liquidation*.   Defendants

7   argue that courts distinguish between liquidating plans and reorganization plans

8   when assessing post-confirmation jurisdiction, and that where there is a plan of

9   liquidation, the close nexus test does not apply.   *See* Opp. Mem. at 9-10.

10   Defendants are wrong.

11        In support of their argument, Defendants rely primarily on *Boston Regional*

12   *Medical Center, Inc. v. Reynolds (In re Boston Regional Medical Center, Inc.)*,

13   410 F.3d 100 (1st Cir. 2005).   Opp. Mem. at 10-11.   In *Boston Regional*, the

14   debtor, Boston Regional Medical Center, Inc. ("Boston Regional"), one of three

15   beneficiaries of a testamentary trust, filed for bankruptcy before distributions

16   from the trust commenced.   *Id.* at 104.   The other two beneficiaries (both

17   churches), filed a complaint in probate court to bar distributions from the trust to

18   Boston Regional.   *Id.*   In an adversary proceeding commenced by the debtor,

19   Boston Regional, to obtain its share of the trust assets, the churches asserted that

20   the bankruptcy court did not have jurisdiction.   *Id.*

21        On appeal to the First Circuit, the churches argued that there was no

22   "related to" bankruptcy jurisdiction, arguing that the adversary action arose after

23   the confirmation of the hospital's plan of reorganization.   *Id.* at 103.   The

24   hospital's plan was strictly a liquidating plan.   *Id.* at 105.   Although Section 1334

25   does not differentiate between reorganizing and liquidating debtors, the *Boston*

26   *Regional* court distinguished between liquidating and reorganizing debtors for

27   purposes of determining post-confirmation "related to" jurisdiction, stating "[a]ny

28   ***litigation involving [a liquidating] debtor*** thus relates much more directly to a

14

PLAINTIFF'S REPLY IN SUPPORT OF
MOTION TO REMAND

proceeding under title 11." *Id.* at 107 (emphasis added).  The court continued:

"*[W]hen a debtor (or a trustee acting to the debtor's behoof) commences litigation designed to marshal the debtor's assets for the benefit of its creditors* pursuant to a liquidating plan of reorganization, the compass of related to jurisdiction persists undiminished after plan confirmation." *Id.* (emphasis added).

*Boston Regional* is thus inapposite on its face.  The *Boston Regional* court's analysis of the distinction between a reorganization plan and a liquidating plan occurred in the context of an action brought by the *debtor* to recover assets for the debtor's estate, in order to increase the funds available to be distributed to all creditors of the debtor.  Unlike the claim asserted in *Boston Regional*, the indemnification claims identified here as supporting "related to" bankruptcy jurisdiction are the claims of Defendant CHL, not of the debtor American Home.  Indeed, American Home is not a party to this action.  There is no basis upon which the assets of American Home will be increased through litigation brought by CHL and thus the reasoning and holding of *Boston Regional* is wholly inapplicable.[9]  *See also In re Insilco Techs., Inc.*, 330 B.R. 512, 525 (Bankr. D. Del. 2005) (rejecting liquidating trustee's argument based on *Boston Regional* that the "close nexus" test should not be applied post-confirmation in a liquidation context); *The CIT Group/Equip. Fin. v. BDO Seidman, LLP.*, Civ. A. 09-431, MDL No. 2021, slip op. at 5-6 (W.D. Pa. July 21, 2009) (finding

---

[9]  Moreover, courts actually construe "related to" jurisdiction *more narrowly in liquidations than in reorganizations*.  *See Celotex Corp. v. Edwards*, 514 U.S. 300, 310 (1995) ("[I]t is relevant to note that we are dealing here with a reorganization under Chapter 11, rather than a liquidation under Chapter 7. The jurisdiction of bankruptcy courts may extend more broadly in the former case than in the latter."); *Romagosa v. Van Diepen (In re Van Diepen)*, No. 6:07-cv-1835, 2008 U.S. Dist. LEXIS 107506, at *24 (M.D. Fla. Sept. 30, 2008) ("related to" jurisdiction is much narrower in liquidation cases brought under Chapter 7 than in other types of bankruptcy cases.").

1    defendant failed to establish "related to" jurisdiction and rejecting argument that a

2    different post-confirmation standard applied to assess "related to" jurisdiction of a

3    case involving a liquidation plan.   The court proceeded to find no "related to"

4    jurisdiction over the removed claim because it was a single claim for negligent

5    misrepresentation between two non-debtors that did not require a court to

6    interpret or construe the plan of liquidation, did not involve the Trustee, and

7    because any recovery in the case was speculative and tenuous).   The other cases

8    cited by Defendants rely on and involve the same fact pattern as *Boston Regional*

9    and are therefore equally inapposite.[10]

10       As further support, Defendants attempt to characterize the holding in *In re*

11   *Pegasus Gold Corp.*, 394 F.3d at 1194 as limited to a plan of reorganization.

12   Opp. Mem. at 10, n.6.   That assertion is misplaced.   *Pegasus* involved a debtor

13   that had both reorganized *and* established a trust to liquidate certain assets for the

14   benefit of creditors.   394 F.3d at 1192 ("the Bankruptcy Court confirmed the

15   Debtors' liquidating/reorganizing plan").   In determining the appropriate test to

16   assess "related to" jurisdiction in the post-confirmation context, the Ninth Circuit

17   noted that "liquidating trusts … 'by their nature maintain a connection to the

18   bankruptcy even after the plan has been confirmed'." *Id.* at 1194 (quoting

19   *Resorts*, 372 F.3d at 167).   Notwithstanding its recognition that liquidating trusts

20   may be more closely related than reorganizations to post-confirmation bankruptcy

21

22   [10]   *See, e.g., Air Cargo, Inc. Litig. Trust v. i2 Tech., Inc. & Mercer Mgmt.
     Consulting, Inc. (In re Air Cargo, Inc.)*, 401 B.R. 178, 187-88 (Bankr. D. Md.

23   2008) (accepting *Boston Regional*'s proposition that a post-confirmation
     proceeding is more likely to be "related to" an underlying bankruptcy case when

24   the debtor is being liquated, ***but applying the close nexus test*** to the claims of a

25   litigation trustee of a liquidated plan); *In re Cross Media Mktg. Corp.*, 367 B.R.
     435, 444 (Bankr. S.D.N.Y. 2007) (citing *Boston Regional* for the proposition that

26   the court's jurisdiction "does not diminish post confirmation ***if the debtor,***

27   ***pursuant to a liquidating plan, seeks to commence litigation to collect the***
     ***debtor's assets for the benefit of its creditors.***") (emphasis added).

28

.   16

PLAINTIFF'S REPLY IN SUPPORT OF
MOTION TO REMAND

1  proceedings, the Ninth Circuit still adopted and applied the "close-nexus" test

2  articulated in *Resorts*. *Id.* (citing *Resorts*, 372 F.3d at 167).

3  **II.    EQUITABLE REMAND IS WARRANTED**

4         Even if this Court were to conclude that this action is "related to" the

5  American Home bankruptcy under section 1334(b), the action still should be

6  remanded to state court on equitable grounds.  The bankruptcy removal statute,

7  28 U.S.C. § 1452, provides that "[t]he court to which such claim or cause of

8  action is removed [as 'related to' a bankruptcy proceeding] may remand such

9  claim or cause of action on any equitable ground."  Courts have held that "[a]ny

10  equitable ground" provides an "unusually broad grant of authority," which

11  "subsumes and reaches beyond all of the reasons for remand under non-

12  bankruptcy removal statutes."  *McCarthy*, 230 B.R. at 417 (citing *Chambers v.*

13  *Marathon Home Loans*, 96 B.R. 296, 299-300 (Bankr. E.D. Cal. 1989)).

14         As noted in Plaintiff's Opening Brief, the relevant factors support such an

15  equitable remand.  (*See* Opening Br. at 21-25.)  The first, seventh and eighth

16  factors do not weigh against remand since this action is not related to the

17  American Home bankruptcy case. *See* Opening Br. at 10-17; *supra* at 2-17.  The

18  outcome of this action is not likely to impair the ability of the trustee to

19  administer the American Home bankruptcy estate.   Moreover, this action is

20  admittedly not a core proceeding and is not based on any provision of Title 11.

21         Defendants contend that the second (predominance of state law issues),

22  third (nature of applicable law), fourth (comity), and sixth (right to a jury trial)

23  factors mandate denial of Plaintiff's motion to remand.  Defendants are mistaken.

24  First, Plaintiffs have asserted state law securities claims, which the California

25  Superior Court is clearly in a better position to adjudicate.   Second, Congress

26  expressly granted state courts concurrent jurisdiction over actions brought under

27  Sections 11, 12(a)(2) and 15 of the Securities Act and specifically made such

28  claims not subject to removal. See 15 U.S.C. § 77v(a).

Defendants brush aside the fifth (jurisdictional basis), seventh (substance, rather than form, of asserted core proceeding), eighth (feasibility of severing state law claims from "core" bankruptcy matters), tenth (forum shopping) and twelfth (presence of non-debtor parties) factors as "clearly inapplicable."  Opp. Mem. at 20.  To the contrary, these factors are clearly applicable and strongly weigh in favor of remand.

With respect to the jurisdictional basis (fifth) factor, Defendants' purported basis for removal is "related to" jurisdiction. It is undisputed that Congress granted the state courts concurrent jurisdiction over the subject matter of this Action and expressly made this Action non-removable.   15 U.S.C. § 77v(a). Since "related to" jurisdiction is not warranted here, this factor clearly weighs in favor of remand.   The seventh and eighth factors, whether this is a "core" proceeding or not, ***unquestionably*** support remand because this Action is admittedly not a "core" proceeding,[11] and the non-core status of the proceedings weighs in favor of abstention.[12]   As to forum shopping, Plaintiff properly commenced this Action in state court pursuant to its state law claims and Congress' grant of concurrent jurisdiction to state courts over Plaintiff's Securities Act claims. *See Luther v. Countrywide Home Loans Servicing LP*, 533 F.3d 1031, 1032 (9th Cir. 2008).   Moreover, a plaintiff's choice of forum is entitled to great weight under California law. *See Ford Motor Co. v. Ins. Co. of N. Am.*, 35 Cal. App. 4th 604, 610-11 (1995) ("plaintiff's choice of forum is

---

[11] Proceedings arising under title 11 and proceedings arising in a case under title 11 are referred to as "core" proceedings, while cases which are only "related to" a case under title 11 are referred to as "non-core" proceedings. *See In re Harris*, 590 F.3d 730, 737 (9th Cir. 2009).

[12] *See  In re Cytodyn of N.M., Inc.*, 374 B.R. 733, 740 (Bankr. C.D. Cal. 2007); *In re Eastport Assocs.*, 935 F.2d 1071, 1077 (9th Cir. 1991) ("the adversary proceeding is not a core proceeding, though it is a related proceeding … and the noncore status of the proceeding should have weighed in favor of abstention").

1  entitled to great weight even though the plaintiff is a nonresident."). California

2  Superior Court was an appropriate forum especially considering that Defendants'

3  only basis for invoking "related to" jurisdiction is the claims *one* of the

4  Defendants in this action, CHL, has against *one* third party mortgage originator of

5  loans underlying *one* of the trusts at issue in this action.

6      Finally, American Home is not a party to this Action, and would not have

7  been a party even absent its bankruptcy. In addition, this Action does not involve

8  the underlying securities of the bankrupt entity. As this Action is exclusively

9  between non-debtor parties, the twelfth factor strongly supports remand.

10  ## III.   DEFENDANTS' REMOVAL WAS IMPROPER BECAUSE THEY

11  FAILED TO REMOVE THE ACTION TO A FEDERAL DISTRICT

WHERE THE RELEVANT BANKRUPTCY CASE WAS PENDING

12

13      As set forth in Plaintiff's Opening Brief, Defendants' removal was

14  improper in this case for the additional reason that Defendants failed to satisfy the

15  two concurrent requirements set forth in Section 1452(a) – that is, that removal be

16  to the court in the district (a) where the state court action is pending *and* (b)

17  which "has jurisdiction of such claim or cause of action under section 1334."

18  Opening Br. at 17-20. In their Opposition, Defendants argue that the second

19  condition was satisfied in this instance because the Central District of California

20  does have jurisdiction over the American Home bankruptcy case. Opp. Mem. at

21  15. Again, Defendants are wrong.

22      Defendants' argument reduces to the proposition that, even though

23  American Home's bankruptcy case was commenced in the Bankruptcy Court in

24  the District of Delaware, that bankruptcy court never obtained exclusive

25  jurisdiction of the bankruptcy case, but shared that jurisdiction with courts in

26  other districts, including the Central District of California. *Id.* This argument not

27  only runs counter to the holdings of numerous courts and the analysis of

28  numerous commentators, it would render the Bankruptcy Code unworkable. As

the First Circuit has pointed out, "[o]nce a bankruptcy case is commenced in a proper forum court, that court has exclusive jurisdiction over administration of the bankruptcy estate. Congress's intent [was] that only one court should have jurisdiction over matters concerning the administration of the bankruptcy estate." *In re Indian Motorcycle Co., Inc.*, 261 B.R. 800, 807-8 (Bankr. 1st Cir. 2001). As the First Circuit further explained, this intention is "evidenced by the addition of 28 U.S.C. § 1334(e) which specifies that the court in which a bankruptcy case is filed 'has exclusive jurisdiction of the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate.' 28 U.S.C. § 1334(e)." *Id.  See also Williams v. Sears, Roebuck & Co. (In re Williams)*, 244 B.R. 858, 866 (S.D. Ga. 2000), *aff'd*, 34 Fed. Appx. 967 (11th Cir. 2002) ("Congress has chosen to vest exclusive jurisdiction over the property of a bankruptcy estate in the 'the district court in which a case under title 11 is commenced or is pending'.").

Tellingly, although *Indian Motorcycle* was cited by Plaintiff in its Opening Brief (at 18), Defendants do not address this case in their Opposition.  In their Opposition, Defendants' only response is the general assertion that "all courts but one have held that Section 1334(e)(1) is limited to proceedings concerning rights in or disposition of a *specific item of property* owned by a debtor."  Opp. Mem. at 15 (emphasis in original).  Defendants cite in support the two bankruptcy court decisions in *Harker v. Wells Fargo Bank, N.A. (In re Krause)*, 414 B.R. 243, 254-6 (Bankr. S.D. Ohio 2009) and *Noletto v. Nationsbanc Mortgage Corp.*, 244 B.R. 845, 850-54 (Bankr. S.D. Ala. 2000).  Defendants' bald assertion, however, is patently false, and their reliance on these two cases is misplaced.

For a start, the First Circuit's holding in *Indian Motorcycle* does not depend on Section 1334(e)(1), and in any case is not limited to an action "*in rem.*"  Furthermore, both *Noletto* and *Krause* involved *class actions* brought by the debtor.  The question in that context was whether Section 1334(e)(1) – which

---

20

confers "exclusive jurisdiction" on the bankruptcy court in which the bankruptcy case is commenced – precluded a bankruptcy court from exercising jurisdiction to determine nationwide debtor or trustee class actions, because by doing so, the bankruptcy court would also be exercising jurisdiction over claims that debtors in other districts might have against the same defendants.   Importantly, while the *Noletto* and *Krause* courts did hold that Section 1334(e)(1) should be limited in its application only to actions *in rem*, and did not preclude a bankruptcy court from exercising jurisdiction over a class action, both the *Noletto* and *Krause* courts noted the split in authority on the issue.   *Noletto*, 244 B.R. at 850-54 (discussing at length the contrary holding in *In re Williams* and that court's holding that Section 1334(e)(1) was not limited to *in rem* situations); *Krause*, 414 B.R. at 253 and 255, n.11 (noting that "courts are split on the issue of whether bankruptcy courts have jurisdiction to determine nationwide debtor or trustee class actions" and citing the decisions in *In re Williams* and *Cline v. First Nationwide Mortgage Corp. (In re Cline)*, 282 B.R. 686 (W.D. Wash. 2002)).   In fact, in *In re Cline*, a decision of a court in the Ninth Circuit, the court discussed and rejected *Noletto*.   *In re Cline*, 282 B.R. at 694.   Thus, Defendants are demonstrably incorrect when they assert that "all courts but one" have held that Section 1334(e)(1) is intended to apply only to actions *in rem*; and *Noletto* and *Krause* are not persuasive, especially because the issue in those cases was whether the courts could exercise jurisdiction over class actions, a concern that is not implicated here.

Defendants' remaining argument is that, if courts were to strictly construe Section 1452(a) to require the satisfaction of the two concurrent conditions, it would "render the grant of district court jurisdiction in Section 1452 surplusage" because few removals could be effected which would satisfy both requirements in Section 1452(a) Opp. Mem. at 16-17.  However, this argument, and the decisions cited by Defendants in support of this argument, should be rejected, because they

1   put the proverbial cart before the horse.  As set forth in Plaintiffs' Opening Brief,

2   removal statutes are strictly construed by the federal courts, the presumption

3   being *against* removal.   Thus, once it is determined that a removal does not

4   comply with the exacting language of a particular removal statute, that removal

5   becomes impermissible.  The job of the federal court under those circumstances is

6   not to ignore or distort the language of the removal statute in such a way so that

7   removal can be effected.

8       Because removal in this case was improper under Section 1452(a), remand

9   is mandated.

10                          **CONCLUSION**

11      For the foregoing reasons, Plaintiff ABP respectfully requests that the

12   Court remand this action to the Superior Court of California, County of Los

13   Angeles.

14   DATED:     December 8, 2010          **BLECHER & COLLINS, P.C.**

15                                        /s/ Maxwell M. Blecher
                                          Maxwell M. Blecher (SBN 26202)
16                                        Maryann R. Marzano (SBN 96867)
                                          515 South Figueroa St., Ste. 1750
17                                        Los Angeles, CA 90071
                                          Telephone:  (213) 622-4222
18                                        Facsimile:   (213) 622-1656

19
                                          Jay W. Eisenhofer, Esq. (*pro hac vice*)
20                                        Geoffrey C. Jarvis, Esq. (*pro hac vice*)
                                          Hung G. Ta, Esq. (*pro hac vice*)
21                                        Deborah A. Elman, Esq. (*pro hac vice*)
                                          **GRANT & EISENHOFER P.A.**
22                                        485 Lexington Avenue
                                          New York, New York 10017
23                                        Telephone: (646) 722-8500
                                          Facsimile: (646) 722-8501
24
                                          *Attorneys for Plaintiff Stichting*
25                                        *Pensioenfonds ABP*

26

27

28

---

22