LINK: 33

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STICHTING PENSIOENFONDS ABP,<br><br>Plaintiff,<br>v.<br><br>COUNTRYWIDE FINANCIAL CORPORATION; COUNTRYWIDE HOME LOANS, INC.; CWALT, INC.; CWMBS, INC.; CWABS, INC.; CWHEQ, INC.; COUNTRYWIDE CAPITAL MARKETS; COUNTRYWIDE SECURITIES CORPORATION; BANK OF AMERICA CORP.; NB HOLDINGS CORPORATION; DEUTSCHE BANK SECURITIES INC.; UBS SECURITIES, LLC; GREENWICH CAPITAL MARKETS, INC. A.K.A. RBS GREENWICH CAPITAL; BARCLAYS CAPITAL INC.; STANFORD L. KURLAND; DAVID A. SPECTOR; ERIC P. SIERACKI; N. JOSHUA ADLER; RANJIT KRIPALANI; JENNIFER S. SANDEFUR; and DAVID A. SAMBOL,<br><br>Defendants. | Case No. 10-CV-07275 MRP (MANx)<br><br>ORDER RE: PLAINTIFF'S MOTION TO REMAND THIS ACTION TO CALIFORNIA STATE COURT |

## I. INTRODUCTION & BACKGROUND

This securities action concerns residential mortgage-backed securities ("RMBS") purchased by Plaintiff Stichting Pensioenfonds ABP ("Plaintiff") in fourteen different offerings structured and sold by almost two dozen defendants, nine of which are referred to as the "Countrywide Defendants."[1] Plaintiff alleges it has been injured by misrepresentations and omissions contained in the offering documents, and alleges violations of §§ 11, 12(a)(2) and 15 of the Securities Act of 1933 and two California state law claims.

On August 18, 2010, Plaintiff filed its Complaint in Los Angeles Superior Court. Docket No. 1 [Notice of Removal]. On September 29, 2010, the Countrywide Defendants filed a Notice of Removal in this Court, purporting to remove the claims based upon "related to" bankruptcy jurisdiction under 28 U.S.C. §§ 1334(b), 1452(a). *Id.* The Countrywide Defendants contend the instant action is related to the bankruptcy case *In re American Home Mortgage Holdings, Inc.*, No. 07-11047-CSS (Bankr. D. Del. filed Aug. 6, 2007), because Countrywide Home Loans ("CHL") has claims against American Home Mortgage Corp. ("American Home") for indemnification arising from claims made in this lawsuit for the repurchase of mortgage loans underlying one of the RMBS offerings at issue here. On October 1, 2010, Defendants Barclays, Deutsche Bank, RBS and UBS joined in the removal. Docket No. 9. On October 30, 2010, Plaintiffs filed the pending motion to remand. Docket No. 33.

For the reasons described below, the Court **DENIES** the motion to remand. There is federal jurisdiction over this action because it is "related to" the American Home bankruptcy case. Finding removal proper, the Court considered whether it should nevertheless grant an equitable remand, but the equitable factors weigh against it.

---

[1] The Countrywide Defendants consist of: Countrywide Financial Corporation; Countrywide Home Loans, Inc. ("CHL"); CWALT, Inc.; CWMBS, Inc.; CWABS, Inc.; CWHEQ, Inc.; Countrywide Capital Markets; Countrywide Securities Corporation; and N. Joshua Adler.

2

A. FACTUAL BACKGROUND

This lawsuit alleges that Defendants misstated the quality of the mortgage loans underlying fourteen offerings of RMBS. One of the offerings, issued by CHL Mortgage Pass-Through Trust 2006-HYB1 (the "2006-HYB1 Trust"), was backed in part by loans originated by American Home and purchased by CHL. *See* Devine Decl., Ex. 1 [2006-HYB1 Trust Prospectus Supplement] at S-26. The loans represented approximately $700 million out of $1.18 billion, more than half of the original principal balance, worth of loans in the 2006-HYB1 Trust. *See id.* CHL purchased those loans from American Home pursuant to a Mortgage Loan Purchase and Interim Servicing Agreement dated November 26, 2003 (the "Purchase Agreement"). *See id.*, Ex. 3. In Article III of the Purchase Agreement, American Home made numerous representations and warranties to CHL regarding the quality of the loans underlying the 2006-HYB1 Trust. *See id.* at 9-18. In Section 3.4 of the Purchase Agreement, American Home explicitly agreed to "defend and indemnify" CHL "and hold it harmless" against:

> any losses, damages, penalties, fines, forfeitures, judgments and any related costs including, without limitation, reasonable and necessary legal fees, resulting from any claim, demand, defense or liability based upon or arising out of any act or omission on the part of the Seller in receiving, processing, funding or servicing any Mortgage Loan, or from any assertion based on, grounded upon or resulting from a breach or alleged breach of any of the Seller's representations and warranties contained in this Article III.

*Id.* at 19. Defendants contend that the filing of this lawsuit automatically triggered CHL's indemnification rights and, therefore, this action will directly impact the assets available for distribution to American Home's creditors. Plaintiffs counter that this action cannot impact the distribution of American Home's bankruptcy estate in the main because the bankruptcy plan has already taken effect and CHL is enjoined from pursuing any further claims against the estate. *See* Suppl. Jarvis Decl. ¶ 2, Ex. A.

B. PROCEDURAL HISTORY

On August 6, 2007, American Home filed a voluntary petition for bankruptcy under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.*, in the bankruptcy court for the District of Delaware. *See* Jarvis Decl., Ex. A. Defendant CHL filed a proof of claim in the American Home bankruptcy proceedings, which it amended on August 28, 2008. *See* Devine Decl., Ex. 2 [Proof of Claim]. The proof of claim encompassed the Purchase Agreement, in which American Home agreed to defend and indemnify CHL and upon which CHL relies for "related to" bankruptcy jurisdiction. *See id.* at 21-22.

On November 25, 2008, American Home filed an Amended Plan of Liquidation ("the Plan"), which was amended on February 18, 2009 and confirmed by the Bankruptcy Court for the District of Delaware on February 23, 2009. Jarvis Decl., Exs. C, D. On November 30, 2010 the Plan went into effect and became binding on all holders of claims against the Debtors that arose before or were filed as of that date. *See* Suppl. Jarvis Decl., Ex. A.

## II. APPLICABLE LAW

Bankruptcy jurisdiction is governed principally by statute. The general grant of bankruptcy jurisdiction is contained in 28 U.S.C. § 1334. That provision vests original jurisdiction in the district courts over "all civil proceedings arising under title 11, or arising in or related to cases under title 11." *Id.* § 1334(b).[2] Claims related to bankruptcy cases may be removed to federal court under 28 U.S.C. §1452. The statute provides, in relevant part: A party may remove any claim or cause of action in a civil action . . . to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title. 28 U.S.C.

---

[2] In what is a typical arrangement, the Central District of California, by standing order, has delegated to the bankruptcy court all cases in which jurisdiction is premised on section 1334, subject to review by the district court (or, alternatively, by the Bankruptcy Appellate Panel) in accordance with 28 U.S.C. §§ 157, 158. *See* C. D. Cal. General Order No. 266, 266A.

4

§1452. The strong presumption against removal means the removing party bears the burden of establishing federal jurisdiction and that removal was proper. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).

With respect to 18 U.S.C. § 1334(b), the statutory grant of "related to" jurisdiction is quite broad. Courts in the Ninth Circuit generally apply the "conceivable effect" test to determine whether an action is related to bankruptcy. *In re Feitz*. 852 F.2d 455, 457 (9th Cir. 1988) (adopting the Third Circuit's articulation of the test in *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3d Cir. 1984)).

> The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether *the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy.* [citations omitted]. Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

*In re Feitz*, 852 F.2d at 457 (quoting *Pacor, Inc. v. Higgins*, 743 F.2d at 994 (emphasis in *Pacor*)). In *In re Feitz*, the Ninth Circuit made clear it was adopting an expansive view of relatedness; even a remote relationship confers "related to" jurisdiction.

Once a bankruptcy plan has been confirmed, the Ninth Circuit has curtailed the reach of "related to" jurisdiction to ensure that bankruptcy jurisdiction does not continue indefinitely. *See In re Pegasus Gold Corp.*, 394 F.3d 1189, 1194 (9th Cir. 2005) (adopting the Third Circuit's post-confirmation approach as articulated in *In re Resorts Int'l, Inc.*, 372 F.3d 154, 166-67 (3d Cir. 2004)). In *In reResorts Int'l, Inc.*, the Third Circuit explained that "bankruptcy court jurisdiction must be confined within appropriate limits and does not extend indefinitely, particularly after the confirmation of a plan and

the closing of a case." 372 F.3d at 165. Thus, when a bankruptcy plan has been confirmed, the Ninth Circuit applies a more stringent "close nexus" test. Under the "close nexus" test, the question is " 'whether there is a close nexus to the bankruptcy plan or proceeding sufficient to uphold bankruptcy court jurisdiction over the matter.' " *In re Pegasus Gold Corp.*, 394 F.3d at 1194 (quoting *In re Resorts Int'l, Inc.*, 372 F.3d at 166-67). Matters that qualify as having a sufficiently close nexus typically include those that affect "the interpretation, implementation, consummation, execution, or administration of the confirmed plan." *Id.*

### III.  DISCUSSION

The Court must determine whether this securities action is related to the bankruptcy of a non-party, American Home, with which Defendant CHL has an indemnification agreement. If the lawsuit is not related, it must be remanded. If it is related, the Court may still remand it for equitable reasons.

#### A. THE COURT APPLIES THE "CLOSE NEXUS" TEST.

The first issue presented is which jurisdictional test the Court should apply here, the "conceivable effect" test or the "close nexus" test. Plaintiff contends the "close nexus" test applies here because the Plan has been confirmed. Defendants disagree, arguing the "close nexus" test is limited to situations where a debtor seeks to reorganize its business and continue operating after bankruptcy, and does not apply in the case of a liquidating plan. Defendants rely on *In re Boston Regional Medical Center, Inc.*, where the First Circuit found that narrowing interpretations of the term "related to" have been invoked only with respect to actions involving reorganized debtors that have reentered the marketplace. The court opined at that time that no case had suggested that courts should abandon the general rule in all post-confirmation cases. 410 F.3d 100, 106 (1st Cir. 2005).

Relying on *In re Boston Regional Medical Center, Inc.*, Defendants distinguish between liquidating plans and true reorganization plans and point out that both *In re Pegasus Gold Corp.* and *In re Resorts Int'l, Inc.*, the cases upon

which Plaintiff relies for the application of the "close nexus" test, involved bankruptcy reorganization plans. *In re Pegasus Gold Corp.*, 394 F.3d 1189; *In re Resorts Int'l, Inc.*, 372 F.3d 154. Here, because American Home is liquidating rather than reorganizing, Defendants argue all proceedings that affect the distribution of assets are "related to" administration of the bankruptcy.

The Court is not persuaded that the reasoning of *In re Boston Regional Medical Center, Inc.* or *Air Cargo, Inc. Lit. Trust*, another case upon which Defendants rely, applies here because those cases were initiated by debtors, pursuant to liquidation plans, seeking to recover assets for the benefit of the debtor's estate. *See In re Boston Regional Medical Center, Inc.*, 410 F.3d at 106-07; *Air Cargo, Inc. Lit. Trust v. i2 Tech., Inc. & Mercer Mgmt. Consulting, Inc.*, 401 B.R. 178, 187-88 (Bankr. D. Md. 2008). In those cases, although the plan had been confirmed, the liquidating debtor was actively seeking to increase the size of the estate and was itself a party to the litigation. In that context, the First Circuit narrowly held that when a debtor (or a trustee acting on its behalf) commences litigation designed to marshal the debtor's assets for the benefit of its creditors pursuant to a liquidating plan of reorganization, the compass of related to jurisdiction persists undiminished after plan confirmation. 410 F.3d at 107. The facts are very different here. Not only does this suit arise post-confirmation, but it involves two non-debtors and the Plan has taken effect. Here, there is no reason to depart from the "close nexus" test, which the Ninth Circuit has explained should apply in post-confirmation lawsuits.

### B. THE COURT HAS JURISDICTION OVER THIS ACTION BECAUSE IT IS RELATED TO BANKRUPTCY.

Under the "close nexus" test, matters that qualify as having a sufficiently close nexus typically include those that affect "the interpretation, implementation, consummation, execution, or administration of the confirmed plan." *In re Pegasus Gold Corp.*, 394 F.3d at 1194. CHL's indemnification agreement with American

Home protects them against "any losses, damages, penalties, fines, forfeitures, judgments and any related costs including, without limitation, reasonable and necessary legal fees resulting from any claim, demand, defense or liability based upon or arising out of any act or omission on the part of [American Home]." Devine Decl., Ex. 3 at 19. The language of this agreement makes clear that American Home's obligation to defend CHL arose immediately upon the filing of this lawsuit. There is therefore no merit to Plaintiff's argument that yet another separate lawsuit would have to proceed—in which CHL gets a judgment regarding American Home's indemnification liability—before the bankruptcy case would be impacted. *See Steel Workers Pension Trust v. Citigroup, Inc.*, 295 B.R. 747, 750, 753 (E.D. Pa. 2003) (finding an action is related to the bankruptcy case only when the right to indemnification is clearly established and accrues upon the filing of the civil action). Because, at a minimum, American Home is bound to indemnify CHL for its costs incurred in defending this lawsuit, this action will necessarily affect "the interpretation, implementation, consummation, execution, or administration of the confirmed plan" of American Home's bankruptcy.

Other federal courts have addressed this precise issue of indemnification of defense costs in this same context of the American Home bankruptcy.[3] For instance, in *City of Ann Arbor Employees' Retirement Sys. v. Citigroup Mortg. Loan Trust, Inc.*, the district court held a securities action involving MBS backed by loans originated by American Home was related to the American Home bankruptcy because a defendant in the action had a contractual claim for indemnification against the debtor. 572 F. Supp. 2d 314, 317-19 (E.D.N.Y. 2008). As in this case, the defendants had filed proofs of claim in the American Home bankruptcy proceeding. *Id.* at 318. The court found that because the defendants'

---

[3] Because those cases were filed before the bankruptcy plan was confirmed, those courts did not even consider whether the "close nexus" test would apply and instead applied the "conceivable effect" test.

claims in the bankruptcy proceeding included claims for reimbursement of fees and expenses incurred in connection with the *defense* of the securities lawsuit, the claims were "not conditional upon the finding that Defendants are liable to Plaintiff here." *Id.* at 319; *accord Massachusetts Bricklayers and Masons Trust Funds v. Deutsche Alt-A Secs., Inc.*, 399 B.R. 119, 123 (E.D.N.Y. 2009) (finding the situation legally and factually identical to *City of Ann Arbor Employees' Retirement System v. Citigroup Mortg. Loan Trust, Inc.*). *See also Federal Home Loan Bank of Seattle v. Deutsche Bank Secs., Inc.*, --- F. Supp. 2d ----, 2010 WL 3512503, at *6 (W.D. Wash. Sept. 1, 2010) (action was related to bankruptcy because the defendants' indemnification agreement with American Home protects them against "any losses arising from any false or misleading statements or omissions or alleged false or misleading statements or omissions related to [American Home's] disclosures."); *Federal Home Loan Bank of Seattle v. Barclays Capital, Inc.*, No. 10-0139 RSM, 2010 WL 3662345, at *6 (W.D. Wash. Sept. 1, 2010) (same).[4]

Numerous other courts in the Ninth Circuit have concluded that a case is "related to" a bankruptcy action where there is an indemnification agreement between the defendant in the case and a bankruptcy debtor, even if the defendant is not guaranteed indemnification. *See, e.g., Hendricks v. Detroit Diesel Corp.*, No. C-09-3939 EMC, 2009 WL 4282812, at *6 (N.D. Cal. Nov. 25, 2009); *Parke v. Cardsystems Solutions, Inc.*, No. C 06-04857 WHA, 2006 WL 2917604, at *4 (N.D. Cal. Oct. 11, 2006); *Citigroup, Inc. v. Pac. Inv. Mgmt. Co., LLC*, 296 B.R. 505, 508 (C.D. Cal. 2003); *Pac. Life Ins. Co. v. J.P. Morgan Chase & Co.*, No. SA CV 03-813 GLT, 2003 WL 22025158, at *1-2 (C.D. Cal. Jun. 30, 2003); *Sizzler*

---

[4] In the *Federal Home Loan Bank of Seattle* cases, the district court nevertheless remanded the case on equitable grounds because the action involved no "core" bankruptcy matters, implicated only state law, and was substantially similar to ten other of the plaintiff's actions that were remanded.

*Restaurants Int'l, Inc. v. Belair & Evans LLP*, 262 B.R. 811, 818-19 (Bankr. C.D. Cal. 2001). These courts were applying the "conceivable effect" test and found "related to" jurisdiction even where claims of indemnification were contingent because it was *conceivable* that the defendants may be entitled to indemnification. This Court applies the "close nexus" test but similarly concludes the indemnification agreement creates "related to" bankruptcy jurisdiction. Under the Purchase Agreement, CHL is entitled to indemnification for its defense costs. Therefore, this action will affect the interpretation, implementation, consummation, execution, or administration of the confirmed Plan.

Plaintiff objects to "related to" jurisdiction on the additional basis that the Plan has already taken effect. Plaintiff argues any claims Defendant CHL had against American Home have already been resolved and this lawsuit can not affect the estate or the payment of claims to any creditors. The purpose of the Plan is to allocate and distribute American Home's assets to its creditors. If the size and scope of CHL's indemnification claim will directly impact the *pro rata* share distributed to CHL under the Plan and the amount of assets available for distribution to other creditors, then it will impact the bankruptcy estate.

The Countrywide Defendants argue that their indemnification claim is unliquidated and unsecured, neither allowed nor disallowed by the Bankruptcy Court. Hearing Tr. at 22:21-23:04; 30:06-11; 31:22-25; 48:23-49:06. According to the Plan, the Plan Trustee retains responsibility for administering such a claim after the effective date of the Plan has passed and can hear objections to the claim until November 30, 2011, before it determines whether to allow the indemnification claim. *See* Hearing Tr. at 48:23-49:06; Ex. C [Plan] at 81-82. For that reason, CHL's indemnification claim can still affect the confirmed Plan even though the effective date has passed.

## C. THE COURT DECLINES TO REMAND THE CASE ON EQUITABLE GROUNDS.

28 U.S.C. § 1452(b) provides that a court to which a claim is removed pursuant to Section 1334 "may remand such claim ... on any equitable ground." Because the "any equitable ground" standard is not statutorily defined, case law has imported factors governing discretionary abstention to assist with the remand decision. *In re Roman Catholic Bishop of San Diego*, 374 B.R. 756, 761 (Bankr. S.D. Cal. 2007). Ninth Circuit courts consider up to fourteen factors in determining whether to remand a "related to" case on equitable grounds. *Citigroup Inc.*, 296 B.R. at 508. The most comprehensive list of factors include:

> (1) the effect or lack thereof on the efficient administration of the estate if the Court recommends [remand or] abstention; (2) extent to which state law issues predominate over bankruptcy issues; (3) difficult or unsettled nature of applicable law; (4) presence of related proceeding commenced in state court or other nonbankruptcy proceeding; (5) jurisdictional basis, if any, other than § 1334; (6) degree of relatedness or remoteness of proceeding to main bankruptcy case; (7) the substance rather than the form of an asserted core proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden on the bankruptcy court's docket; (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; (12) the presence in the proceeding of nondebtor parties; (13) comity; and (14) the possibility of prejudice to other parties in the action.

*Id.* at 508 n.2; *see Hopkins v. Plant Insulation Co.*, 349 B.R. 805, 813 (N.D. Cal. 2006); *Williams v. Shell Oil Co.*, 169 B.R. 684, 692-93 (S.D. Cal. 1994). Because Section 1452(b) affords "an unusually broad grant of authority," any one of the

relevant factors may provide a sufficient basis for equitable remand. *In re Roman Catholic Bishop of San Diego*, 374 B.R. at 761.

Plaintiff urges the Court to equitably remand this case because this lawsuit is not a core bankruptcy proceeding, is only tangentially related to the American Home bankruptcy, and will have no impact on that case. Furthermore, Plaintiff argues all parties to this lawsuit are non-debtors and Defendants are merely engaging in forum shopping which will prejudice the Plaintiff. Applying the preceding factors, however, the Court holds that remand to the state court is not appropriate here.

The Court finds the most important factors in this case are the second, third, fourth and ninth factors, which weigh against remand. Most significantly, this is a federal securities action at its core; a nearly identical action is already proceeding here in this Court. The issues in this lawsuit are complex and in some respects novel, but they involve the application of federal law. This Court is intimately familiar with these issues because its docket includes a nearly identical case, *Maine State Ret. Sys. v. Countrywide Fin. Corp.*, No. 10-cv-00302 MRP (MANx) (C.D. Cal.). Both cases include allegations of violations of Sections 11, 12 and 15 of the federal Securities Act of 1933 and involve 11 of the same MBS offerings. By contrast, with respect to the state law claims, there are no unsettled or difficult issues of state law that weigh in favor of remand. Thus, this Court is better suited to resolve these issues than the Los Angeles County Superior Court.

The Court finds several factors favor neither party. Plaintiff accuses the Defendants of forum shopping, but the facts suggest Plaintiff, too, is forum shopping. Plaintiff is not a citizen of California, but has filed in Los Angeles County Superior Court this federal securities action based on nationwide MBS. The suit is an "opt-out" case related directly to a nearly identical suit proceeding in this Court. Plaintiffs admit they prefer to litigate in state court, despite the predominance of federal securities law claims and the related cases in this Court,

because "the discovery stay pursuant to the Private Securities Litigation Reform Act of 1995 does not apply to State court actions," and because "a jury trial in California would require less than a unanimous verdict." Mot. at 24. Thus, both parties are forum shopping. Plaintiff also expresses concern that Defendants will attempt to transfer this action to bankruptcy court where a jury trial would be unavailable, yet Defendants have argued in this motion against transfer to the bankruptcy court and a jury trial is guaranteed in this Court.

Comity does not require remand. The case is in its infancy and was removed before any motions to dismiss or responsive pleadings were filed. Moreover, the California state court system does not have a strong interest in adjudicating cases where a foreign plaintiff brings claims for violation of federal securities laws over nationwide MBS offerings. Likewise, neither party will be prejudiced by having to proceed in either venue, state or federal court. Geographically, both fora are equally convenient.

## IV. CONCLUSION

The Court holds it has "related to" bankruptcy jurisdiction over this action and declines to equitably remand it to state court. The motion to remand is therefore **DENIED**. In accordance with the Court's October 19, 2010 Order, Defendants shall file any motions to dismiss or other response to the Complaint within 30 days from the date of this Order. *See* Docket No. 26.

**IT IS SO ORDERED.**

DATED: December 29, 2010

Hon. Mariana R. Pfaelzer
United States District Judge

13