MICHAEL D. TORPEY (SBN 79424)
*mtorpey@orrick.com*
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, California 94105-2669
Telephone:    415-773-5700
Facsimile:    415-773-5759

MICHAEL C. TU (SBN 186793)
*mtu@orrick.com*
TEODORA E. MANOLOVA (SBN 233333)
*tmanolova@orrick.com*
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, California 90017
Telephone:    213-629-2020
Facsimile:    213-612-2499

Attorneys for Defendant David Sambol

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| STICHTING PENSIOENFONDS ABP,<br><br>                    Plaintiff,<br><br>          v.<br><br>COUNTRYWIDE FINANCIAL CORPORATION, et al.,<br><br>                    Defendants. | Case No. 10-CV-07275 MRP (MANx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DAVID SAMBOL'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**<br><br>Date:   June 27, 2011<br>Time:   11:00 a.m.<br>Judge: Hon. Mariana R. Pfaelzer<br>Ctrm:   Courtroom 9<br>            Spring Street Courthouse |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................................. 1

II.   THE FAC'S ALLEGATIONS AGAINST MR. SAMBOL ........................... 2

III.  PLAINTIFF'S CLAIMS AGAINST MR. SAMBOL SHOULD BE
      DISMISSED AS A MATTER OF LAW ......................................................... 3

      A.   Plaintiff's Claims Are Time-Barred ..................................................... 3

      B.   Plaintiff Fails To Plead A Claim for Violation of the Securities
           Laws ..................................................................................................... 5

           1.   Plaintiff Has Not Adequately Pled A 10(b) Claim Against
                Mr. Sambol ................................................................................. 5

                a.   Plaintiff Does Not Plead With Particularity Facts
                     Establishing That Mr. Sambol Made Any
                     Misstatement ................................................................... 6

                b.   Plaintiff Does Not Plead With Particularity Facts
                     Establishing That Mr. Sambol Acted With Scienter ....... 6

                c.   Plaintiff Has Not Pled Reliance ..................................... 11

           2.   Mr. Sambol Cannot Be Liable Under Section 11 Because
                He Did Not Sign Any of the Relevant Registration
                Statements ................................................................................. 11

           3.   Mr. Sambol Cannot Be Liable As A Control Person
                Under Sections 15 or 20(a) ...................................................... 12

      C.   Plaintiff Does Not Plead Any Cognizable Claims Against Mr.
           Sambol Under the California Corporations Code ............................... 15

           1.   Plaintiff's Claim Under Sections 25400(d) and 25500 Is
                Insufficient Because There Was No Actionable
                Misstatement By Mr. Sambol And He Did Not Sell Or
                Offer To Sell The Certificates ................................................. 15

           2.   Plaintiff's Claim Under Sections 25401 and 25501 Is
                Insufficient Because There Was No Actionable
                Misstatement By Mr. Sambol Or Privity .................................. 17

           3.   Mr. Sambol Cannot Be Liable for Violating Section
                25504  Because He Did Not Control Any Underlying
                Violation ................................................................................... 17

      D.   Plaintiff Fails to Adequately Plead Any Common Law Claims
           Against Mr. Sambol ............................................................................ 18

           1.   Mr. Sambol Cannot Be Liable for Common Law Fraud or
                Negligent Misrepresentation .................................................... 18

           2.   Mr. Sambol Is Not Liable For Aiding And Abetting Fraud ..... 19

IV.   CONCLUSION .............................................................................................. 19

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

## CASES

4

*In re 2007 Novastar Fin., Inc. Sec. Litig.*,
   2008 WL 2354367 (W.D. Mo. June 4, 2008) .......................................................9

5

*Apollo Capital Fund, LLC v. Roth Capital Partners, LLC*,
   158 Cal. App. 4th 226 (2007).............................................................................17

6

7

*Bains v. Moores*,
   172 Cal. App. 4th 445 (2009).............................................................................17

8

*Batwin v. Occam Networks, Inc.*,
   2008 WL 2676364 (C.D. Cal. July 1, 2008) ......................................................12

9

*Belodoff v. Netlist, Inc.*,
   2009 WL 2777320 (C.D. Cal. Sept. 1, 2009)......................................................12

10

11

*Cal. Amplifier, Inc. v. RLI Ins. Co.*,
   94 Cal. App. 4th 102 (2001)..........................................................................16, 17

12

*In re Calpine Corp. Sec. Litig.*,
   288 F. Supp. 2d 1054 (N.D. Cal. 2003)..............................................................13

13

14

*In re Connectics Corp. Sec. Litig.*,
   542 F. Supp. 2d 996 (N.D. Cal. 2008)..................................................................7

15

*In re Countrywide Fin. Corp. Derivative Litig.*,
   554 F. Supp. 2d 1044 (C.D. Cal. 2008)..............................................................11

16

17

*In re Countrywide Fin. Corp. Sec. Litig.*,
   588 F. Supp. 2d 1132 (C.D. Cal. 2008)..............................................................11

18

*DiLeo v. Ernst & Young*,
   901 F.2d 624 (7th Cir. 1990), *cert. denied*, 498 U.S. 941 (1990) .....................10

19

20

*In re Digital Island Sec. Litig.*,
   223 F. Supp. 2d 546 (D. Del. 2002) ...................................................................15

21

*In re Downey Sec. Litig.*,
   2009 WL 736802 (C.D. Cal. Mar. 18, 2009) ......................................................13

22

23

*Fiol v. Doellstedt*,
   50 Cal. App. 4th 1318 (1996).............................................................................19

24

*Footbridge Ltd. Trust v. Countrywide Home Loans, Inc.*,
   2010 WL 3790810 (S.D.N.Y. Sept. 28, 2010) ...............................................8, 14

25

26

*In re Gap Stores Sec. Litig.*,
   457 F. Supp. 1135 (N.D. Cal. 1978)...................................................................13

27

28

- ii -

1

**TABLE OF AUTHORITIES**
(continued)

2

Page(s)

3

*In re Guidant Corp. Sec. Litig.,*
536 F. Supp. 2d 913 (S.D. Ind. 2008) ................................................ 11

4

*In re Hansen Natural Corp. Sec. Litig.,*
527 F. Supp. 2d 1142 (C.D. Cal. 2007) ......................................... 10, 14

5

*Hertzberg v. Dignity Partners,*
191 F.3d 1076 (9th Cir. 1999) ........................................................... 12

6

7

*Howard v. Everex Sys.,*
228 F.3d 1057 (9th Cir. 2000) ........................................................... 13

8

*In re Int'l Rectifier Corp. Sec. Litig.,*
2008 WL 4555794 (C.D. Cal. May 23, 2008) ................................... 13

9

10

*Johnson v. Ry. Express Agency, Inc.,*
421 U.S. 454 (1975) .......................................................................... 3, 5

11

*Kainos Labs., Inc. v. Beacon Diag. Inc.,*
1998 WL 2016634 (N.D. Cal. Sept. 14, 1998) ....................... 13, 16, 18

12

13

*Kaiser Found. v. Abbott Labs.,*
2009 WL 3877513 (C.D. Cal. Oct. 8, 2009) ........................................ 5

14

*Kamen v. Lindly,*
94 Cal. App. 4th 197 (2001) .............................................................. 16

15

16

*Lipton v. PathoGenesis Corp.,*
284 F. 3d 1027 (9th Cir. 2002) .......................................................... 10

17

*Lopes v. Vieira,*
2010 WL 3853287 (E.D. Cal. Sept. 30, 2010) .................................. 16

18

19

*Lubin v. Sybedon Corp.,*
688 F. Supp. 1425 (S.D. Cal. 1988) .................................................... 2

20

*Maine State Ret. Sys. v. Countrywide Fin. Corp.,*
722 F. Supp. 2d 1157 (C.D. Cal. 2010) ......................................... 1, 3, 6

21

22

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.,*
540 F.3d 1049 (9th Cir. 2008) ........................................................... 11

23

*Middlesex Ret. Sys. v. Quest Software Inc.,*
527 F. Supp. 2d 1164 (C.D. Cal. 2007) ............................................. 14

24

25

*Mirkin v. Wasserman,*
5 Cal. 4th 1082 (1993) ....................................................................... 18

26

*In re Miva, Inc., Sec. Litig.,*
544 F. Supp. 2d 1310 (M.D. Fla. 2008) ............................................. 11

27

28

1

**TABLE OF AUTHORITIES**
**(continued)**

2

Page(s)

3

*Murphy v. BDO Seidman, LLP*,
   113 Cal. App. 4th 687 (2003)................................................................. 16

4

*In re NovaGold Res. Inc. Sec. Litig.*,
   629 F. Supp. 2d 272 (S.D.N.Y. 2009)....................................................... 5

5

6

*Paracor Fin., Inc. v. GE Capital Corp.*,
   96 F.3d 1151 (9th Cir. 1996)............................................................ 12, 13

7

*Patel v. Parnes*,
   253 F.R.D. 531 (C.D. Cal. 2008) .............................................................. 12

8

9

*Pittleman v. Impac Mortg. Holdings, Inc.*,
   2009 WL 648983 (C.D. Cal. Mar. 9, 2009) ........................................... 9

10

*RSM Prod. Corp. v. Fridman*,
   643 F. Supp. 2d 382 (S.D.N.Y. 2009) ....................................................... 7

11

12

*Saunders v. Super. Ct.*,
   27 Cal. App. 4th 832 (1994)................................................................... 19

13

*SEC v. Mozilo*,
   2010 WL 3656068 (C.D. Cal. Sept. 16, 2010) ....................................... 7

14

15

*SEC v. Seaboard Corp.*,
   677 F.2d 1289 (9th Cir. 1982)................................................................ 17

16

*SEC v. Steadman*,
   967 F.2d 636 (D.C. Cir. 1992) ................................................................. 9

17

18

*Shamsian v. Atl. Richfield Co.*,
   107 Cal. App. 4th 967 (2003)................................................................ 18

19

*Sharenow v. Impac Mortg. Holdings, Inc.*,
   2010 WL 2640195 (9th Cir. June 29, 2010) ........................................ 12

20

21

*Shawmut Bank, N.A. v. Kress Assocs.*,
   33 F.3d 1477 (9th Cir. 1994).................................................................... 6

22

*In re Silicon Graphics Inc. Sec. Litig.*,
   183 F.3d 970 (9th Cir. 1999)................................................................... 7

23

24

*Snyder v. Newhard, Cook & Co., Inc.*,
   764 F. Supp. 612 (D. Colo. 1991) ............................................................. 5

25

*In re Stac Elecs. Sec. Litig.*,
   89 F.3d 1399 (9th Cir. 1996)............................................................... 3, 5

26

27

*In re Syntex Corp. Sec. Litig.*,
   95 F.3d 922 (9th Cir. 1996).................................................................... 6

28

- iv -

1

## TABLE OF AUTHORITIES
### (continued)

2

**Page(s)**

3

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
   551 U.S. 308 (2007) ............................................................................7, 9

4

*Wanetick v. Mel's of Modesto, Inc.,*
   811 F. Supp. 1402 (N.D. Cal. 1992)................................................... 15

5

6

*In re Worlds of Wonder Sec. Litig.,*
   35 F.3d 1407 (9th Cir. 1994) .............................................................. 10

7

*Zucco Partners, LLC v. Digimarc Corp.,*
   552 F.3d 981 (9th Cir. 2009) .............................................................. 10

8

9

10

## STATUTES AND RULES

11

15 U.S.C. §77k(a)(1) ............................................................................... 11

12

Cal. Corp. Code §25400 .....................................................................6, 16

13

Cal. Corp. Code §25401 ...............................................................6, 17, 18

14

Cal. Corp. Code §25500 ...............................................................6, 16, 17

15

Cal. Corp. Code §25501 ...............................................................6, 17, 18

16

Cal. Corp. Code §25504 .................................................................. 17, 18

17

Fed. R. Civ. P. 9(6)................................................................................. 16

18

Fed. R. Civ. P. 12(f)..................................................................................7

19

20

## MISCELLANEOUS

21

B.E. Witkin, *Summary of Cal. Law*, Torts §772 (10th Ed. 2005) ........... 18

22

23

24

25

26

27

28

- v -

## I.   INTRODUCTION

As set forth in the motion to dismiss of the Countrywide defendants, in which Mr. Sambol has joined, the claims against him should be dismissed pursuant to this Court's decision in *Maine State Ret. Sys. v. Countrywide Fin. Corp.*, 722 F. Supp. 2d 1157 (C.D. Cal. 2010), because Plaintiff's claims are all time-barred by the applicable statutes of limitations and repose.  No tolling is alleged, and even if it were, the *Luther* state court class action did not toll Plaintiff's claims.[1]  In fact, eight of the ten claims raised in the First Amended Complaint ("FAC") were never even asserted against Mr. Sambol in *Luther* and therefore are time-barred against him for that reason alone.

But the claims against Mr. Sambol should also be dismissed because they are insufficiently pled.  The FAC makes myriad claims broadly against the defendants but never connects Mr. Sambol in any way to the allegedly misleading securitizations or statements at issue.  Plaintiff's claims for fraud and negligent misrepresentation never even allege that Mr. Sambol made a false or misleading statement.  Because Mr. Sambol is not alleged to have (and did not) make, sign, or control any false or misleading statements, he cannot be liable as a matter of law.

The FAC's new fraud claims against Mr. Sambol under the Securities Exchange Act, the California Corporations Code and common law should also be dismissed because they are time-barred and fail to allege that Plaintiff relied on any alleged misstatement by him.

Plaintiff's Section 11 claim against Mr. Sambol is similarly deficient because he *never signed* any of the registration statements that are alleged to be misleading, a judicially noticeable fact that is uncontradicted by the FAC.  Nor is he alleged to have sold Plaintiff its Certificates, rendering the Corporations Code claims against him insufficient because of their privity requirement.

---

[1] *See Luther v. Countrywide Home Loans Servicing LP*, Case No. BC 380698 (Cal. Super. Ct.).

1    Moreover, the claims for secondary "control person" liability against Mr.

2  Sambol should be dismissed because Plaintiff has not pled any actionable

3  underlying primary violation against him.  The boilerplate assertion that Mr.

4  Sambol – along with ten other defendants – was a controlling person of seven

5  other individuals, including his superiors, and eleven distinct entities – does not

6  come close to adequately pleading a control person claim.  FAC ¶¶39-41, 238-49,

7  293.  Mr. Sambol is not even alleged to have held any position whatsoever at nine

8  of these entities (FAC ¶37), and there are no allegations that connect him to the

9  violations he is supposed to have controlled.  Plaintiff's reliance on allegations

10  taken from other lawsuits that are based on different statements, different

11  securities, and different facts, does not remedy the numerous pleading deficiencies

12  with respect to its claims against Mr. Sambol.

13    Rather than allege specific facts against Mr. Sambol, the FAC resorts to the

14  improper "'dragnet' tactic of indiscriminately grouping all of the individual

15  defendants into one wrongdoing monolith." *Lubin v. Sybedon Corp.*, 688 F. Supp.

16  1425, 1443 (S.D. Cal. 1988).  For these reasons, the Court should dismiss the

17  claims against Mr. Sambol.

18  **II.    THE FAC'S ALLEGATIONS AGAINST MR. SAMBOL**

19    This case is about purported misrepresentations in the offering documents

20  for fifteen securitizations, but the FAC does not allege that Mr. Sambol was

21  involved in any securitizations, much less the ones that Plaintiff supposedly

22  purchased its Certificates in.  Mr. Sambol is not alleged to have made a single

23  misstatement in connection with those securitizations.  Instead, each of the alleged

24  misrepresentations concerning the Certificates pertains to specific disclosures over

25  which Mr. Sambol had no direct oversight or involvement, and the FAC does not

26  allege otherwise.  The FAC alleges only that Mr. Sambol held two positions at

27  Countrywide:  (1) President, CEO, and a member of the Board of Directors for

28  CWHEQ; and (2) President and COO of Countrywide Financial Corporation.

1   FAC ¶37.  Moreover, although Plaintiff alleges that Mr. Sambol signed CWHEQ's

2   *pre-effective* registration statements on January 10, March 2, and April 17, 2007,

3   those are not the Registration Statements[2] challenged in the FAC.  *Id.*

### III.   PLAINTIFF'S CLAIMS AGAINST MR. SAMBOL SHOULD BE DISMISSED AS A MATTER OF LAW

#### A.   Plaintiff's Claims Are Time-Barred

7           Plaintiff's claims should be dismissed because they are barred by the

8   applicable limitations and repose periods.  Countrywide Mem. at Sec. I.  The FAC

9   makes no attempt to plead compliance with these periods, or to offer any

10   explanation for the untimeliness of its claims.  *Id.*[3]

11          Despite the untimely nature of Plaintiff's claims against Mr. Sambol and the

12   Court's direction in the *Maine State* Order, the FAC still does not allege that any

13   tolling applies to save its untimely claims.  *See Maine State*, 722 F. Supp. 2d at

14   1167.  Even if the FAC did contain a tolling allegation, it would be without merit

15   because each claim: (1) is based on offerings and securities that were never

16   included in a prior class complaint, (2) was never brought by a plaintiff with

17   standing, (3) was untimely when made, or (4) was never asserted in a prior class

18   complaint.  *See id.* at 1166-67; *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1411

19   (9th Cir. 1996) (dismissing securities claims brought against new defendants in

20   amended complaint where one year limitations period expired following original

21   complaint); *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 467 (1975)

22   ("[T]he tolling effect given to the timely prior filings in *American Pipe* . . .

23   depended heavily on the fact that that those filings involved *exactly the same*

24   *cause of action* subsequently asserted.  This factor was more than a mere abstract

---

25   [2] "Registration Statements" refers to the registration statements at issue in this
26   case, FAC ¶¶51, 55.  Although FAC ¶51 alleges nine Registration Statements, ¶55 only alleges eight.
27   [3] Additionally, the claims based on the CWABS Asset-Backed Certificates
28   Trust 2007-11 were not brought in plaintiff's initial complaint, but added in the First Amended Complaint filed February 14, 2011.

1    or theoretical consideration because the prior filing in each case necessarily

2    operated to avoid the evil against which the statute of limitations was designed to

3    protect.") (emphasis added).

4         But even assuming the statute of limitations is tolled from the

5    commencement of the *Luther* case, the claims against Mr. Sambol remain

6    untimely because he was not named as a defendant in the *Luther* litigation until a

7    subsequent complaint that was filed on June 12, 2008.  Sambol's Request for

8    Judicial Notice ("RJN"), Exs. A, B.  An abundance of publicly-available

9    information put Plaintiff on inquiry notice of the facts underlying its claim against

10   Mr. Sambol well before June 2007.[4]

11        Furthermore, no tolling can preserve any Section 15 claim against Mr.

12   Sambol because Plaintiff's ability to assert that cause of action expired no later

13   than October 16, 2009 – well before this action was commenced on August 18,

14   2010.  Even if the one year limitations period against Mr. Sambol were tolled

15   during the period that he was named as a Section 15 defendant in the *Luther*

16   action, the claim was voluntarily dropped by the plaintiffs when they filed their

17   amended complaint on October 16, 2008, restarting the computation of time on

18   that date.[5]  More than one year passed before any plaintiff attempted to re-allege a

19   ─────────────────

20   [4] In February 2006, analysts covering Countrywide were already anticipating credit quality deterioration caused by slower housing price appreciation and "payment shock" for some mortgage borrowers of Countrywide.  RJN, Ex. C at 4.

21   By late 2006 and early 2007, the public was well-informed of Countrywide's problems, including accelerating credit deterioration and rising delinquencies and foreclosures attributed in part to "the marked deterioration in underwriting

22   standards."  RJN, Ex. D at 2; *see also* Ex. E at 3-5; Ex. F at 1, 5; Ex. G at 2.  On

23   April 26, 2007, during Countrywide's First Quarter Earnings Conference Call, the Company disclosed weakening housing prices and increased foreclosures and

24   defaults.  RJN, Ex. H.  Specifically, Countrywide's Chief Risk Officer, John McMurray, stated that Countrywide had increased its default expectations and that

25   loan vintages as far back as 2005 and as recent as early 2007 were expected to "perform worse than what [Countrywide] originally expected . . . [as a consequence

26   of] additional fraud and other problems across the industry with those loans." *Id.* Any argument that the Plaintiff was not on inquiry notice of its claim against Mr.

27   Sambol prior to June 2007 is contradicted by these judicially-noticeable facts.

       [5] Mr. Sambol was first named as a defendant in the complaint filed on June 12,

28   2008 in *Washington State Plumbing and Pipefitting Pension Fund Trust v.*

Section 15 claim against Mr. Sambol.  The claim is therefore clearly barred by the one year limitations period.  *See, e.g.*, *Stac*, 89 F.3d at 1411 (dismissing claim added more than one year following original complaint as untimely).[6]

### B.    Plaintiff Fails To Plead A Claim for Violation of the Securities Laws

Although the Court need go no further with respect to the claims against Mr. Sambol, the FAC also fails to plead the essential elements of the federal securities claims asserted against him.  Plaintiff does not allege that Mr. Sambol made any misrepresentations or that he signed any of the Registration Statements at issue, rendering the Section 10(b) and Section 11 claims against him insufficient as a matter of law.  The FAC also fails to allege particularized facts establishing a strong inference of scienter as to Mr. Sambol.  The control person claims against Mr. Sambol also fail for lack of any underlying violation and insufficient allegations that he controlled any primary violator.

### 1.    Plaintiff Has Not Adequately Pled A 10(b) Claim Against Mr. Sambol

The FAC does not allege that Mr. Sambol made any misstatement relating

---

*Countrywide Fin. Corp., et al.*, No. BC 392571 (Cal. Super. Ct.) ("*Washington State*").  RJN, Ex. B.  Mr. Sambol was not named as a defendant in the original complaint filed in *Luther v. Countrywide Home Loans Servicing LP*, No. BC 380698 (Cal. Super. Ct.) ("*Luther*") on November 14, 2007.  RJN, Ex. A.  On September 9, 2008, the *Luther* plaintiffs filed their amended complaint based on substantially similar allegations as those in *Washington State* (and this action), including a Section 15 claim against Mr. Sambol.  The *Luther* and *Washington State* actions were consolidated, and the *Luther* plaintiffs filed their consolidated complaint on October 16, 2008, which included numerous Sections 11, 12(a)(2) and 15 claims based on nearly all of the offerings at issue in the prior complaints, *but did not assert any Section 15 claim against Mr. Sambol* in that operative complaint. RJN, Ex. I.

[6]  *Accord In re NovaGold Res. Inc. Sec. Litig.*, 629 F. Supp. 2d 272, 289 (S.D.N.Y. 2009) (dismissing Section 15 claim brought in amended complaint where statute of limitations expired after filing of original complaint but before Section 15 claims were added); *Snyder v. Newhard, Cook & Co., Inc.*, 764 F. Supp. 612, 617-20 (D. Colo. 1991) (similar); *see also Kaiser Found. v. Abbott Labs.*, 2009 WL 3877513, at *7 n.7 (C.D. Cal. Oct. 8, 2009) (class complaint did not toll claims that the complaint did not make, citing *Johnson*, 421 U.S. at 454, for proposition that "class action tolling 'depend[s] heavily on the fact that those filings involved exactly the same cause of action subsequently asserted.'").

1   to the mortgage-backed securities at issue in this case; nor does it plead with any

2   specificity that he acted with scienter in making any alleged misstatement, or that

3   Plaintiff relied on such a misstatement.

4          **a.     Plaintiff Does Not Plead With Particularity Facts Establishing That Mr. Sambol Made Any Misstatement**

5

6          Plaintiff does not allege a single misrepresentation by Mr. Sambol.  The

7   only documents that Mr. Sambol is alleged to have signed are three CWHEQ

8   registration statements from 2007, all of which were *pre-effective* and none of

9   which relate to the securities at issue in the FAC.  *Compare* FAC ¶37 (registration

10  statements Sambol allegedly signed) with ¶51 (Registration Statements at issue in

11  FAC, none of which are in ¶37); *see also* RJN, Exs. J-L (registration statements

12  labeled "pre-effective").[7]  Nowhere does the FAC allege that any of the content of

13  the three pre-effective CWHEQ registration statements from 2007 was false or

14  misleading.  FAC ¶¶153-68 (quoting allegedly false or misleading content from

15  the Registration Statements in ¶51, reflecting documents from this case, but not

16  ¶37, reflecting documents Mr. Sambol allegedly signed).[8]

17         **b.     Plaintiff Does Not Plead With Particularity Facts Establishing That Mr. Sambol Acted With Scienter**

18

19         The Section 10(b) claim against Mr. Sambol should also be dismissed for

20  the additional reason that the FAC pleads none of the required particularized facts

21  giving rise to a "strong inference of deliberate or conscious recklessness," *In re*

22  ────────────────

23  [7] The Registration Statements, quoted at length in the complaint, are proper subjects of judicial notice, and this Court has previously taken judicial notice of Countywide's SEC filings.  *See Maine State*, 722 F. Supp. 2d at 1161, n.1; *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 926 (9th Cir. 1996) (taking judicial notice of "documents whose contents are alleged in [the] complaint and whose authenticity no party questions, but which are not physically attached to the pleading").

24

25

26  [8] Plaintiff's Section 10(b), fraud, negligent misrepresentation, and California Corporations Code Sections 25400, 25500, 25401 and 25501 claims against Mr. Sambol similarly require a misrepresentation and should also be dismissed on this basis.  *See Shawmut Bank, N.A. v. Kress Assocs.*, 33 F.3d 1477, 1489 (9th Cir. 1994) (dismissing 10(b), fraud, misrepresentation, Cal. Corp. Code §§25400, 25401, 25500, and 25501 claims for lack of misstatement).

27

28

1   *Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 979 (9th Cir. 1999), that is "at least

2   as compelling as any opposing inference of nonfraudulent intent . . . ."  *Tellabs,*

3   *Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007).  Plaintiff is required

4   to adequately allege "knowing or intentional conduct" or "deliberate recklessness"

5   so severe as to "reflect[] some degree of intentional or conscious misconduct."

6   *Silicon Graphics*, 183 F.3d at 976-77 (internal quotation marks omitted).

7        With respect to Mr. Sambol's alleged scienter, the FAC cites to the *SEC v.*

8   *Mozilo* decision, 2010 WL 3656068, at *16-20 (C.D. Cal. Sept. 16, 2010), which

9   involved a different plaintiff in a different case regarding different securities and

10  different statements.  *See, e.g., In re Connectics Corp. Sec. Litig.*, 542 F. Supp. 2d

11  996, 1004-06 (N.D. Cal. 2008) (striking portions of complaint relying on SEC

12  complaint and dismissing claims based on stricken paragraphs); *RSM Prod. Corp.*

13  *v. Fridman*, 643 F. Supp. 2d 382, 403 (S.D.N.Y. 2009) (allegations from other

14  cases not "resolved on the merits" are immaterial as a matter of law).  For the

15  reasons discussed in Countrywide's motion, these allegations are immaterial

16  within the meaning of Fed. R. Civ. P. 12(f) and should be disregarded.  *See*

17  Countrywide Mem. at Sec. II.C.6.  Moreover, the *Mozilo* case involved allegations

18  concerning Countrywide's common stock, not the Certificates at issue here.  Judge

19  Walter in the SEC case considered various allegations, facts, and documents that

20  are not part of the FAC, and expressly declined to consider the disclosures that are

21  at issue in this case.  *Mozilo*, 2010 WL 3656068, at *9, 11 (reasonable investor in

22  common stock "is not required to . . . review hundreds of prospectus supplements

23  filed by indirect subsidiaries").

24        The only remaining allegations which Plaintiff claims support an inference

25  of scienter as to Mr. Sambol are cross-referenced in FAC ¶171, and variously

26  allege that Mr. Sambol was aware:

27        •   that John McMurray, Countrywide's Chief Risk Officer, had concerns

28            that the strategy of "matching" products in the market was aggressive

1   and posed risks.  FAC ¶¶77-81.

2   •   that an audit revealed income reported on stated income loans did not

3       match certain borrowers' IRS records.  *Id.* ¶91.

4   •   that Mr. Mozilo had concerns about payment shock in adjustable-rate

5       mortgages.  *Id.* ¶103.

6   •   that Countrywide should be "willing to price virtually any loan that we

7       reasonably believe we can sell, securitize, without losing money, even if

8       other tenders [sic] can't or won't do the deal."  *Id.* ¶110.

9   •   that Mr. McMurray thought exceptions were likely to experience higher

10      default rates and Countrywide's approach to exceptions should be

11      revisited.  *Id.* ¶113.

12  •   that the Bank's "cherry-picking" of loans could result in higher risk in

13      securitized loans.  *Id.* ¶151.

14      A district judge in New York recognized in dismissing similar allegations

15  that plaintiffs do "not tie the general allegations" of improper exceptions, appraisal

16  practices, predatory lending and inadequate servicing to the Securitizations at

17  issue.  *Footbridge Ltd. Trust v. Countrywide Home Loans, Inc.*, 2010 WL

18  3790810, at *13-17 (S.D.N.Y. Sept. 28, 2010).  Here, Plaintiff does not allege that

19  undisclosed "payment shock" in the securitizations caused Plaintiff's claimed

20  losses (*cf. id.* at *13), that Mr. Sambol had a duty to disclose that exceptions could

21  have higher default rates, or that income reported on stated income loans did not

22  always match the borrowers' IRS records.  *Cf. id.* at *15 ("Furthermore, the SAC

23  fails to allege a fiduciary duty that would obligate defendants to disclose that

24  borrowers who received loans originated pursuant to lower documentation

25  programs had an increased likelihood of default."), *19 (allegation based on

26  communications regarding accuracy of stated-income amounts reported by

27  borrowers insufficient because "plaintiffs do not tie the allegations about officers'

28  concerns with other types of loan products or other transactions to the statements

1   made with respect to the Securitizations at issue here").

2         In addition, allegations regarding Messrs. Mozilo's and McMurray's

3   supposed views do not support a strong inference of *Mr. Sambol's* scienter.  An

4   officer's mere exposure to differing views and debates regarding business

5   decisions does not create an inference of scienter.  *Pittleman v. Impac Mortg.*

6   *Holdings, Inc.*, 2009 WL 648983, at *3 (C.D. Cal. Mar. 9, 2009) (allegations of

7   "disagreements regarding the loan approval process on a regular basis" did not

8   support strong inference of scienter).[9]

9         Similarly, the very conduct that Plaintiff characterizes as "cherry-picking"

10  and a "matching strategy" was disclosed to investors.  *See SEC v. Steadman*, 967

11  F.2d 636, 642 (D.C. Cir. 1992) (disclosure is "hardly the sort of behavior one

12  would expect from the perpetrator of securities fraud").  The Company disclosed

13  its strategy of following the market, retaining certain types of high-quality loans at

14  the Bank, and securitizing the remainder of its originations.  *See, e.g.*, RJN, Ex. M.

15  Mr. Sambol told investors at a May 24, 2005 presentation that Countrywide

16  maintained "without question the broadest product line in the mortgage banking

17  industry" and expressed the Company's strategy that if a borrower "genuinely

18  qualifies for a home loan anywhere else in the US, they will qualify at

19  Countrywide and if that customer has a product preference, that product will reside

20  on our product menu."  RJN, Ex. N at 366 (transcript).[10]

21        Furthermore, Mr. Sambol's stock sales result in a *negative inference* of

22  scienter, which must be considered by the Court.  *See Tellabs*, 551 U.S. at 324 (the

23  ───────────────

24  [9] *Accord In re 2007 Novastar Fin., Inc. Sec. Litig.*, 2008 WL 2354367, at *4 (W.D. Mo. June 4, 2008) (it is "normal and expected" that executives would

25  "regularly attend[] meetings during which the adverse effects of policy changes, adverse changes in the Company's financial position, and ways to improve the Company's operations were discussed").

26  [10] Mr. Sambol made similar public statements in a September 12-13, 2006 investor presentation.  RJN, Ex. O at 370 (stating Countrywide's strategy is "to

27  have every loan program on our menu that's otherwise legitimately offered by any competitor, in other words, to have a fully complete menu such that we'll never

28  have to tell our customers that Countrywide doesn't have the program they want").

1   "court must consider plausible nonculpable explanations for the defendant's

2   conduct").[11]  During the period when Mr. Sambol allegedly was engaged in a

3   fraudulent scheme, he (i) *increased* his total holdings, and (ii) retained millions of

4   shares of Countrywide stock, resulting in the loss of millions in his personal

5   holdings.  *See* RJN, Exs. P, Q.  The strong and compelling inference that may be

6   drawn from this is the opposite of scienter.  *See In re Worlds of Wonder Sec.*

7   *Litig.*, 35 F.3d 1407, 1424-25 (9th Cir. 1994) ("[I]f, as Plaintiffs allege, the

8   Officers knew [the company] was heading for financial disaster, they probably

9   would have bailed out of their substantial holdings.  Each of the Officer

10   Defendants, by contrast, held onto most of their [company] stock and incurred the

11   same large losses as did the Plaintiffs themselves.") (internal citations omitted).[12]

12   It defies rational behavior to believe that Mr. Sambol would engage in a fraudulent

13   scheme to enrich himself but then retain his holdings as millions of his personal

14   wealth was lost.  *See, e.g.*, *DiLeo v. Ernst & Young,* 901 F.2d 624, 629 (7th Cir.

15   1990), *cert. denied*, 498 U.S. 941 (1990) ("People sometimes act irrationally, but

16   indulging ready inferences of irrationality would too easily allow the inference that

17   ordinary business reverses are fraud.  One who believes that another has behaved

18   irrationally has to make a strong case.").[13]

19

20   [11] *See also Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009) ("A court must compare the malicious and innocent inferences cognizable from the facts pled in the complaint, and only allow the complaint to survive a motion to dismiss if the malicious inference is at least as compelling as any opposing inference.").  As the Ninth Circuit held, "[t]here is no indication that *Tellabs* has altered [the Ninth Circuit's] pleading standard based on suspicious stock sales." *Id.* at 1006.

24   [12] *Accord Lipton v. PathoGenesis Corp.*, 284 F.3d 1027, 1037 (9th Cir. 2002) (no inference of scienter where insider retained majority of stock and experienced large losses as stock price declined); *In re Hansen Natural Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1160 (C.D. Cal. 2007) ("[A]ny inference of scienter is defeated when an insider sells only a portion of his stock holdings and 'end[s] up reaping the same large losses as did' Plaintiff when the stock price dropped.").

27   [13] This Court has previously recognized that Mr. Sambol's trades do not support a strong inference of scienter.  The Court has recognized that plaintiffs have failed to tie insider sales to (1) the stock repurchase, (2) each insider's history of stock sales, or (3) the public statements at issue.  *In re Countrywide Fin. Corp.*

1   Also, Mr. Sambol sold pursuant to a pre-established Rule 10b5-1 plan (RJN,

2   Ex. Q), and his 2007 plan authorized fewer shares for sale than his 2006 plan did

3   and contained a higher price floor (from $35 to $40) (RJN, Exs. R, S), further

4   refuting any inference of scienter.  *Metzler Inv. GMBH v. Corinthian Colleges,*

5   *Inc.*, 540 F.3d 1049, 1067 n.11 (9th Cir. 2008) ("Sales according to pre-

6   determined plans may 'rebut an inference of scienter.'").[14]

7   ### c.   **Plaintiff Has Not Pled Reliance**

8   Plaintiff is not entitled to the fraud-on-the-market presumption of reliance

9   and must plead actual reliance for each defendant. Countrywide Mem. at Sec. VI.

10  The FAC has not pled reliance on any statements by Mr. Sambol, and does not even

11  mention him in its purported section on reliance.  *See* FAC ¶¶56-64; *In re*

12  *Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1198 & 1199 n.80 (C.D.

13  Cal. 2008) ("reliance must be pled with particularity to state a claim" especially

14  "where the face of the complaint suggests that plaintiff may not have relied on the

15  market at all") (internal citation omitted).

16  ### 2.   **Mr. Sambol Cannot Be Liable Under Section 11 Because He Did Not Sign Any of the Relevant Registration Statements**

17

18  The Section 11 claim against Mr. Sambol should be dismissed because

19  nowhere in the FAC is he actually alleged to have signed any of the registration

20  statements at issue.  15 U.S.C. §77k(a)(1) (Section 11 claims may be brought

21  against "every person who signed the registration statement").  It is a judicially

22  _____

23  *Deriv. Litig.*, 554 F. Supp. 2d 1044, 1067-68 (C.D. Cal. 2008); *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1189 n.71 (C.D. Cal. 2008) (noting

24  that even if the Court were to take judicial notice of the absolute-dollar values of Mr. Sambol's sales during the repurchase periods, "they give . . . no reason to infer

25  that Sambol's behavior changed during the repurchases" and thus no reason to draw any inference of scienter).

26  [14] *Accord In re Miva, Inc., Sec. Litig.*, 544 F. Supp. 2d 1310, 1316-17 (M.D. Fla. 2008) (trades "pursuant to a Rule 10b5-1Trading [p]lan . . . rebut[ ] any

27  possible inference of scienter from the stock sales"); *In re Guidant Corp. Sec. Litig.*, 536 F. Supp. 2d 913, 931-32 (S.D. Ind. 2008) (in considering "competing

28  inferences," fact that shares were sold under a 10b5-1 plan weighed in favor of defendant).

1   noticeable fact that he did not sign any of them.  RJN, Exs. T-BB.

2          Instead, Plaintiff only alleges that Mr. Sambol signed three *other pre-*

3   *effective* registration statements.  The FAC does not identify any false statements

4   purportedly made by Mr. Sambol in those registration statements, and even if it

5   did, Plaintiff could not base its claim on Mr. Sambol signing registration

6   statements other than those at issue in the FAC.  *Hertzberg v. Dignity Partners*,

7   191 F.3d 1076, 1080 (9th Cir. 1999) (Section 11 plaintiff "must have purchased a

8   security issued under that, rather than some other, registration statement").  This is

9   not a mere pleading technicality – a Section 11 claim must be properly pled

10  because the statute narrowly circumscribes who may be sued and for what type of

11  alleged misstatement.  *See, e.g.*, *Batwin v. Occam Networks, Inc.*, 2008 WL

12  2676364, at *20 (C.D. Cal. July 1, 2008) ("[W]hatever the usual rule about

13  construing remedial securities legislation broadly . . . care should be taken before

14  section 11 is extended beyond its normal reading.") (internal citations omitted).

15          **3.    Mr. Sambol Cannot Be Liable As A Control Person Under**
16                 **Sections 15 or 20(a)**

17          As set forth in the Countrywide defendants' motion, the underlying claims

18  alleged in the FAC against other defendants are insufficiently pled.  Countrywide

19  Mem. at Secs. II-VII.  Accordingly, the control person claims against Mr. Sambol

20  are insufficient for that reason alone.[15]

21          But even if the FAC pled an underlying primary violation under the federal

22  securities laws (which it does not), it still fails to allege any cognizable "control

23  person" claim against Mr. Sambol.  In order to establish that he is a control person,

---

24          [15] Plaintiff has not pled "(a) that a primary violation of the securities laws
25  occurred and (b) that [Mr. Sambol] directly or indirectly controlled the person or
    entity committing the primary violation."  *Patel v. Parnes*, 253 F.R.D. 531, 561
26  (C.D. Cal. 2008) (citing *Paracor Fin., Inc. v. GE Capital Corp.*, 96 F.3d 1151, 1161
    (9th Cir. 1996)); *Belodoff v. Netlist, Inc.*, 2009 WL 2777320, at *10 (C.D. Cal. Sept.
27  1, 2009) (dismissing Section 15 claim for failure to plead underlying Section 11
    violation); *Sharenow v. Impac Mortg. Holdings, Inc.*, 2010 WL 2640195 (9th Cir.
28  June 29, 2010) (affirming dismissal of Section 20(a) claim for failure to plead
    primary violation of Section 10(b)).

1   Plaintiff must show that he "exercised actual power or control over the primary

2   violator." *Howard v. Everex Sys.*, 228 F.3d 1057, 1065 (9th Cir. 2000).  That

3   purported control must be over "allegedly wrongful acts," *Kainos Labs., Inc. v.*

4   *Beacon Diag. Inc.*, 1998 WL 2016634, at *16 (N.D. Cal. Sept. 14, 1998), and facts

5   must be pled establishing "the times, dates, and places that such control allegedly

6   occurred." *In re Downey Sec. Litig.*, 2009 WL 736802, at *15 (C.D. Cal. Mar. 18,

7   2009).

8        But the FAC does not allege any of the facts that would establish Mr.

9   Sambol as a control person – there are no allegations that he (i) was involved in

10  the preparation of any of the Registration Statements that are alleged to contain

11  misleading statements or omissions; (ii) drafted, signed, approved, or prepared any

12  filing that the FAC alleges to have been misleading; or (iii) made or directed any

13  defendant to make any statement that the FAC alleges was false or misleading.

14  There is no basis whatsoever to infer that Mr. Sambol controlled any of the alleged

15  misstatements and omissions.  *See Paracor Fin., Inc. v. GE Capital Corp.*, 96 F.3d

16  1151, 1163 (9th Cir. 1996) ("being an officer or director does not create any

17  presumption of control" and plaintiff must allege that "[defendant] exercised direct

18  or indirect control" over transaction in question); *In re Calpine Corp. Sec. Litig.*,

19  288 F. Supp. 2d 1054, 1059, 1081 (N.D. Cal. 2003) (dismissing control person

20  claims for failure to plead that CEO, CFO, and Controller "played a role in the

21  preparation" of the misstatements).[16]

22       Judge Walter dismissed similarly pled claims against three individuals,

23  holding that the plaintiff's "boilerplate" control person claims were insufficient:

24  _____

25  [16] *Accord In re Int'l Rectifier Corp. Sec. Litig.*, 2008 WL 4555794, at *22
    (C.D. Cal. May 23, 2008) ("[A]side from a boilerplate allegation, Plaintiffs have not
26  alleged that [an individual, Executive Officer defendant] had authority over the
    preparation of the financial statements or press releases or conference calls
27  containing the misleading statements … [t]hus, Plaintiffs' [control person] claim
    against [the Executive Officer] fails."); *In re Gap Stores Sec. Litig.*, 457 F. Supp.
28  1135, 1141-43 (N.D. Cal. 1978) (finding no control where the defendant did not
    sign the prospectus and played only a negligible role in the company's offering).

1
2
3
4
5
6
7

> Plaintiff has failed to plead that the Individual Defendants exercised the requisite control for a [control person] claim. Plaintiff has alleged that '[b]y virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements . . ., the Individual Defendants had the power to influence and control . . . the decision making of the Company . . . .' However, this boilerplate allegation is insufficient to state a claim for control person liability. '[E]ven a CEO is not automatically a 'controlling person' under Section 20(a). Accordingly, this claim also will be dismissed without leave to amend.

8   *In re Hansen Natural Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1147, 1163 (C.D.

9   Cal. 2007) (citations and parentheticals omitted).

10          While the FAC alleges that ten defendants controlled eight individuals and

11   eleven distinct entities,[17] Plaintiff does not even allege that Mr. Sambol held any

12   position at nine of these eleven entities, many of which are not even subsidiaries of

13   Countrywide.  *Cf. Footbridge*, 2010 WL 3790810, at *23 ("[P]laintiffs fail to

14   plausibly allege that Mozilo's position as a 'corporate insider' at the parent

15   corporation, CFC, made him a 'corporate insider or affiliate with direct

16   involvement' in the various subsidiaries' actions related to the Securitizations.").

17   Nor is Plaintiff's claim tenable that Mr. Sambol controlled the other individual

18   defendants, including Messrs. Mozilo and Kurland, who were both higher-ranking

19   Countrywide executives.  *See Middlesex Ret. Sys. v. Quest Software Inc.*, 527 F.

20   Supp. 2d 1164, 1194-95 (C.D. Cal. 2007) (dismissing Section 20(a) claim against

21   defendant whose Section 10(b) co-defendants were either his peers or supervisors).

22          The remaining control person allegations are not supported by any facts

23   specific to Mr. Sambol.  Plaintiff alleges that Mr. Sambol controlled a subset of

24   the Section 15 and 20(a) defendants:  CFC, CHL, CSC, CCM, CWALT, CWMBS,

25   CWABS and CWHEQ.  But Mr. Sambol's supposed control of these entities (and

26
27
28

----

[17] *See* FAC ¶¶39-41, 238-49 (Section 20(a) claim); *see also* FAC ¶¶40, 293 (Section 15 allegation that CFC, CSC, CCM, CHL and the Individual Defendants was "a controlling person of the Issuing Defendants" (five defendants) and "had the power and influence and exercised the same to cause the Issuing Defendants to engage in the acts therein").

1   only these entities) is supported by only inadequate allegations: (1) his "numerous

2   positions and roles within Countrywide," (2) his signing "numerous materially

3   false and misleading CFC documents filed with the SEC," (3) his alleged

4   supervision of Mr. Kripalani at CSC, (4) his alleged power and influence over

5   underwriting guidelines, and (5) his membership on various Countrywide

6   committees and the board of directors.  FAC ¶¶218-22.[18]  Mr. Sambol's alleged

7   positions at CFC and CWHEQ are plainly insufficient to state control of even

8   those entities.  *Wanetick v. Mel's of Modesto, Inc.*, 811 F. Supp. 1402, 1407 (N.D.

9   Cal. 1992) ("Mere titles are not adequate indicators of control authority."); *In re*

10  *Digital Island Sec. Litig.*, 223 F. Supp. 2d 546, 561 n.9 (D. Del. 2002) ("[E]ven a

11  CEO is not automatically a 'controlling person.'").  Nor do his signatures on

12  extraneous Countrywide filings – which Plaintiff never identifies or explains why

13  they were misleading – support the claim that he controlled Countrywide

14  subsidiaries.  The other allegations at most indirectly connect Mr. Sambol to one

15  subsidiary of Countrywide (CSC) but no other entities are even mentioned.

16        **C.    Plaintiff Does Not Plead Any Cognizable Claims Against Mr.**
              **Sambol Under the California Corporations Code**
17

18        Plaintiff's claims under California's securities laws should be dismissed for

    the reasons discussed in the Countrywide defendants' motion.  Moreover, they are
19
    defectively pled with respect to Mr. Sambol for several additional reasons.
20

21              **1.    Plaintiff's Claim Under Sections 25400(d) and 25500 Is**
                    **Insufficient Because There Was No Actionable**
                    **Misstatement By Mr. Sambol And He Did Not Sell Or Offer**
22                  **To Sell The Certificates**

23        Plaintiff's California Corporations Code claims under Sections 25400(d)

24  and 25500 are insufficiently pled because Mr. Sambol is not alleged to have made

25

26  ───────────────
        [18] The allegation that Mr. Sambol served on Countrywide's board or any of its
27  committees during the relevant period is demonstrably false.  It is judicially
    noticeable that Mr. Sambol was not elected to CFC's board until well *after* the last
28  securitization in this case.  RJN Ex. CC (8-K announcing Sambol joined board in
    September of 2007).

any false or misleading statement.[19]  *See Cal. Amplifier, Inc. v. RLI Ins. Co.*, 94 Cal. App. 4th 102, 111 (2001) ("When, as here, section 25400, subdivision (d) is involved, section 25500 liability requires a person to make a false or misleading statement for the purpose of inducing the purchase or sale of stock.").  Contrary to Plaintiff's assertion that the defendants "made statements" that are the subject of this claim (FAC ¶266), the FAC never identifies *any* statements by Mr. Sambol.

As a separate and additional basis for dismissal, Plaintiff has failed to plead that Mr. Sambol sold or offered to sell the Certificates to Plaintiff, as required by the privity requirement of Section 25500.  *Kamen v. Lindly*, 94 Cal. App. 4th 197, 206 (2001) ("[W]e conclude that civil liability pursuant to section 25500 applies only to a defendant who is either a person selling or offering to sell or buying or offering to buy a security.").[20]  Not only does the FAC fail to allege that Mr. Sambol sold or offered to sell the Certificates, but others are alleged to have solicited and made the sales.  FAC ¶¶45-46, 50, 286.

Additionally, this claim must also be dismissed because it does not meet the heightened pleading requirements of Rule 9(b).  *Kainos Labs*, 1998 WL 2016634, at *13 (Rule 9(b) applies to Cal. Corp. Code §25500 claim).  A Section 25500 claim requires that Plaintiff show that the defendant "*knowingly* [made a false] statement [] with the *deliberate intent* to *manipulate the price of a security* . . . for the *purpose of inducing the purchase or sale of security by another person*."  *Cal. Amplifier*, 94 Cal. App. 4th at 110-11 (emphasis added).  The allegations regarding Mr. Sambol's scienter do not come close to the deliberate recklessness standard

---

[19] Section 25400 makes it unlawful for a "person selling or offering for sale or purchasing or offering to purchase the security, to make, for the purpose of inducing the purchase or sale of such security by others, any statement which" was false or misleading, "and which he knew or had reasonable ground to believe was so false or misleading."  Section 25500 creates a claim against "[a]ny person who willfully participates in any act or transaction in violation of Section 25400."

[20] *Accord Murphy v. BDO Seidman, LLP*, 113 Cal. App. 4th 687, 705 (2003) (similar); *see also Lopes v. Vieira*, 2010 WL 3853287, at *22 (E.D. Cal. Sept. 30, 2010) ("Defendants were not "sellers" within the meaning of Section 25400(d); they did not solicit or play any role in inducing Plaintiff to purchase a security.").

1   required for a 10(b) claim, let alone the higher pleading burden under Section

2   25500 that he acted "*willfully, not merely recklessly.*"  *Id.* at 112 (emphasis added).

3                    **2.      Plaintiff's Claim Under Sections 25401 and 25501 Is
                              Insufficient Because There Was No Actionable
4                              Misstatement By Mr. Sambol Or Privity**

5          The claim under Sections 25401 and 25501 requires Plaintiff to identify a

6   misrepresentation by Mr. Sambol, which the FAC fails to do.[21]

7          Plaintiff also cannot state a claim against Mr. Sambol under these sections

8   because he did not sell Plaintiff the Certificates.  Section 25501 requires that a

9   purchaser of securities may only bring claims against the person or entity who sold

10  it the securities.  Cal. Corp. Code §25501 ("Any person who violates Section

11  25401 shall be liable to the person who purchases a security from him . . . .").

12  Actual privity is required.  *SEC v. Seaboard Corp.*, 677 F.2d 1289, 1296 (9th Cir.

13  1982) (Section 25401 limits liability to the "literal seller"); *Apollo Capital Fund,*

14  *LLC v. Roth Capital Partners, LLC*, 158 Cal. App. 4th 226, 253-54 (2007)

15  ("Section 25501 on its face requires privity between the plaintiff and the

16  defendant. . . . [L]iability under section 25501 attaches only to the actual seller of

17  the securities.").  Plaintiff claims to have purchased the Certificates from the

18  Securitization Trusts (FAC ¶50), which are not named defendants.  The FAC does

19  not, and cannot, claim that it was Mr. Sambol who sold Plaintiff the Certificates.

20                   **3.      Mr. Sambol Cannot Be Liable for Violating Section 25504
                              Because He Did Not Control Any Underlying Violation**
21

22         Plaintiff's claim under Section 25504 should also be dismissed because

23  there is no actionable underlying claim under Section 25401.  *See* Cal. Corp. Code

24  §25504 (providing for joint and several liability for violations of §25401); *Bains v.*

25  *Moores*, 172 Cal. App. 4th 445, 479 (2009) (affirming dismissal of §25504 claim

26  _____

27       [21] Cal. Corp. Code §25401 (making it unlawful to sell a security "by means of
        any written or oral communication which includes an untrue statement of a material
28      fact or omits to state a material fact necessary in order to make the statements made,
        in the light of the circumstances under which they were made, not misleading").

1   where no primary liability claim is pled).

2          Even if a primary violation by the Trusts (the entities purportedly in privity

3   with Plaintiff) had been adequately pled, the FAC does not adequately allege that

4   Mr. Sambol controlled the Trusts.  For the same reasons that the Section 15 and

5   20(a) claims are insufficient, the California control person claim is also

6   insufficient.  *Kainos Labs.*, 1998 WL 2016634, at *14 ("[T]he control person

7   statute under California law is substantially the same as the federal statute.").  Nor

8   can Mr. Sambol be liable under Section 25504 as a "principal executive officer or

9   director" of the primary violator at the time of the violation (FAC ¶299) because

10  he is only alleged to have been an officer or director at CWHEQ and CFC, neither

11  of which could be a primary violator of Sections 25401/25501 because of the strict

12  privity requirement.  *See supra* at Sec. III.C.2.

13      **D.      Plaintiff Fails to Adequately Plead Any Common Law Claims
                  Against Mr. Sambol**

14

15          **1.      Mr. Sambol Cannot Be Liable for Common Law Fraud or
                       Negligent Misrepresentation**

16          Not a single allegedly misleading or inaccurate statement in the FAC is

17  attributed to Mr. Sambol, rendering the fraud and negligent misrepresentation

18  claims against him insufficient as a matter of law.[22]  As discussed in the

19  Countrywide defendants' brief, the FAC also fails to plead the required element of

20  actual reliance.  Plaintiff cannot have relied on any statement by Mr. Sambol, as

21  no such statements are alleged in the FAC.  *E.g.*, *Mirkin v. Wasserman*, 5 Cal. 4th

22  1082, 1088 (1993) (plaintiff must plead actual reliance).  Plaintiff's fraud claim

23  against Mr. Sambol should also be dismissed for the additional reason that the

24  FAC fails to adequately plead Mr. Sambol's scienter.  *See supra* at Sec. III.B.1.b.

25

26          [22] The elements of fraud are: (1) misrepresentation; (2) knowledge of falsity
     (scienter); (3) intent to defraud, i.e., induce reliance; (4) justifiable reliance; and (5)
27   resulting damage.  5 B.E. Witkin, *Summary of Cal. Law*, Torts §772 (10th Ed.
     2005).  Negligent misrepresentation is the same, with the exception of scienter.  *See*
28   *Shamsian v. Atl. Richfield Co.*, 107 Cal. App. 4th 967, 983 (2003).

### 2.   Mr. Sambol Is Not Liable For Aiding And Abetting Fraud

Plaintiff's claim that Mr. Sambol "provided the Common-Law Fraud Defendants with substantial assistance in perpetrating the fraud" (FAC ¶263) is insufficient for at least three reasons. First, no underlying claim of fraud has been adequately pled. Countrywide Mem. at Secs. II-III. Second, the purported "aiding and abetting" claim is against CFC, CCM, Mr. Mozilo and the Individual Defendants, without any particular allegation against Mr. Sambol. FAC ¶¶260-64. That does not come close to the level of pleading particularity required against each individual defendant – the FAC does not identify how Mr. Sambol had knowledge of the purported fraud or substantially assisted or encouraged it. *Saunders v. Super. Ct.*, 27 Cal. App. 4th 832, 846 (1994) (elements of aiding and abetting claim include knowledge of fraud and substantial assistance). None of the purported "substantial assistance" alleged against the defendants as a group is supported by any facts particular to Mr. Sambol. FAC ¶263. Third, the claim is also barred under California law because an employee "cannot aid or abet his or her corporate employer." *Fiol v. Doellstedt*, 50 Cal. App. 4th 1318, 1326 (1996).

### IV.   CONCLUSION

For the foregoing reasons, the claims against Mr. Sambol should be dismissed.

Dated:  March 25, 2011                    Respectfully submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP

By:      */s/ Michael C. Tu*
                Michael C. Tu

Attorneys for Defendant David Sambol